[Cite as *Fifth Third Mtge. Co. v. Berman*, 2019-Ohio-1068.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Fifth Third Mortgage Company,              :

             Plaintiff-Appellee,              :              No. 17AP-563
                                                  (C.P.C. No. 16CV-2400)

v.              :

                                                   (REGULAR CALENDAR)

Jeffrey C. Berman,              :

             Defendant-Appellant,              :

Unknown Spouse, if any, of Jeffrey C.              :
Berman et al.,

                                      :

             Defendants-Appellees.

                                        :

## D E C I S I O N

### Rendered on March 26, 2019

**On brief**: *Lerner, Sampson & Rothfuss, Rick D. DeBlasis*, and *William P. Leaman*, for appellee. **Argued**: *Rick D. DeBlasis.*

**On brief**: *Jeffrey C. Berman*, pro se. **Argued**: *Jeffrey C. Berman.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Jeffrey C. Berman, from a judgment of the Franklin County Court of Common Pleas finding in favor of plaintiff-appellee, Fifth Third Mortgage Company, in its foreclosure action arising from appellant's default on a note and mortgage.

{¶ 2} On August 12, 2004, appellant executed a promissory note in favor of appellee in the amount of $132,500, secured by a first mortgage. On September 30, 2009, appellee filed a complaint in foreclosure in Franklin C.P. No. 09CV-14673, naming as

defendants appellant and various governmental entities with potential competing tax liens against the property. The complaint alleged appellee was the owner and holder of a promissory note executed by appellant, and that the note was in default; it was further alleged a balance of $124,175.86 was due on the note, and appellee was entitled to judgment on that amount and to sale of the property pursuant to the mortgage securing the note.

{¶ 3} Appellant filed an answer, asserting appellee had not provided him with proper notice of default and acceleration as required by the terms of the note and mortgage. Appellee subsequently filed a motion for summary judgment. On June 30, 2011, the trial court granted summary judgment in favor of appellee. Appellant appealed the trial court's grant of summary judgment asserting a genuine issue of material fact existed as to whether appellee provided the requisite notice of default and acceleration under the terms of the note and mortgage.

{¶ 4} In *Fifth Third Mtge. Co. v. Berman,* 10th Dist. No. 11AP-637, 2012-Ohio-4411, ¶ 18 ("*Berman I*"), this court found there remained a genuine issue of material fact as to whether appellee complied with the terms of the note and mortgage before proceeding with foreclosure. More specifically, we held that the copy of the default notice, mailed by appellee in August 2009, "supports the proposition that [appellee] mailed it to a post office box rather than the address of the subject property." *Id.* at ¶ 19. Accordingly, this court reversed the trial court's grant of summary judgment in favor of appellee. Following remand, appellee filed a notice of dismissal on April 19, 2013 pursuant to Civ.R. 41(A).

{¶ 5} On April 8, 2013, appellee sent appellant a notice of default and acceleration. On April 30, 2013, appellee filed a complaint in foreclosure against appellant in Franklin C.P. No. 13CV-4804. The complaint sought judgment against appellant on the note in the amount of $124,175.86, plus interest.

{¶ 6} On September 11, 2014, appellee filed a motion for summary judgment. On November 20, 2014, appellant filed a memorandum in opposition. On December 25, 2014, appellant filed a motion to dismiss, pursuant to Civ.R. 9(C), for failure to satisfy a condition precedent; specifically, appellant asserted appellee failed to provide him with at least 30 days to cure the default before accelerating the sums secured by the note and seeking foreclosure by judicial proceedings.

{¶ 7} On March 11, 2015, the trial court issued a decision and entry denying appellee's motion for summary judgment, and also denying appellant's motion to dismiss. Further, the trial court granted summary judgment sua sponte in favor of appellant based on the fact appellee filed its complaint for foreclosure eight days prior to the expiration of the 30-day window provided to appellant to cure the default. The trial court's entry dismissed the case with prejudice.

{¶ 8} Appellee filed an appeal with this court, asserting the trial court erred in dismissing the action with prejudice after sua sponte entering summary judgment in favor of appellant. In *Fifth Third Mtge. Co. v. Berman*, 10th Dist. No. 15AP-394, 2015-Ohio-4466 ("*Berman II*"), this court reversed the judgment of the trial court and remanded the case for the court to issue a new judgment entry dismissing the action without prejudice. On October 28, 2015, the trial court filed a judgment entry dismissing case No. 13CV-4804 without prejudice.

{¶ 9} On March 9, 2016, appellee filed the instant foreclosure complaint against appellant. The complaint alleged appellee was the owner and holder of a promissory note executed by appellant on August 12, 2004; further, the note was secured by a mortgage on the real property located at 324 N. Stanwood Road, Bexley, Ohio. It was alleged that the original promissory note had been lost or destroyed, and that such note was in appellee's possession when the loss of possession occurred. Appellee alleged appellant was in default on the promissory note and the mortgage securing the note, and that the sum of $124,175.86 was due from May 1, 2009.

{¶ 10} On May 23, 2016, appellant filed a motion to dismiss, pursuant to Civ.R. 12(B)(6), asserting the applicable statute of limitations had expired and appellee was unable to avail itself of Ohio's savings statute. On June 20, 2016, appellee filed a memorandum contra appellant's motion to dismiss. By decision and entry filed September 20, 2016, the trial court denied appellant's motion to dismiss. The parties subsequently filed cross-motions for summary judgment. By decision and entry filed January 19, 2017, the trial court denied the cross-motions for summary judgment. On February 2, 2017, appellant filed a motion to dismiss pursuant to Civ.R. 12(B)(6). By decision and entry filed February 6, 2017, the trial court denied appellant's motion to dismiss.

{¶ 11} On June 26, 2017, the trial court conducted a bench trial. By decision and entry filed July 10, 2017, the trial court entered judgment in favor of appellee on its claim for judgment on the note in the amount of $124,275.86, and found appellee was entitled to foreclosure on the property.

{¶ 12} On appeal, appellant, pro se, sets forth the following two assignments of error for this court's review:

> I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING JUDGMENT TO PLAINTIFF-APPELLEE ON THE SUBJECT NOTE AND MORTGAGE.
>
> II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING TO PLAINTIFF-APPELLEE A DECREE IN FORECLOSURE ON THE SUBJECT PROPERTY.

{¶ 13} Appellant's assignments of error are interrelated and will be considered together. Appellant argues, generally, under these assignments of error, the trial court erred in granting judgment in favor of appellee on the note and mortgage and in granting appellee a decree in foreclosure.[1] The primary issues raised by appellant are whether the trial court erred in holding that appellee's lawsuit was filed within the applicable statute of limitations period, and whether the court erred in its interpretation of Ohio's savings statute.

{¶ 14} In general, in reviewing a civil appeal from a bench trial, this court applies a "manifest weight standard of review." *Benton Village Condominium Owners Assn. v. Bridge*, 8th Dist. No. 106892, 2018-Ohio-4896, ¶ 13. A reviewing court "will not reverse the judgment as being against the manifest weight of the evidence if some competent, credible evidence supports all the essential elements of the case." *Huntington Natl. Bank v. Miller*, 10th Dist. No. 14AP-586, 2016-Ohio-5860, ¶ 13, citing *C.E. Morris v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). Further, "[i]n determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a

---

[1] On page three of his pro se brief, appellant's statement of the assignments of error sets forth two assignments of error. On page four of the brief, in his statement of the issues presented for review, appellant sets forth five issues; however, in the body of the brief, appellant references the same statement of the issues presented for review as five separate assignments of error. While this court will address each of the five issues presented for review, we will consider those issues in the context of arising under either the first or second assignments of error as set forth in his statement of the assignments of error.

presumption that the findings of the trial court are correct."  *Id.*, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 15} As indicated under the facts, the trial court conducted a bench trial in this matter on June 26, 2017.  We note, however, appellant has not provided this court with a complete trial transcript of those proceedings.  Specifically, the record on appeal with respect to the court's proceedings of June 26, 2017 consists of limited excerpts pertaining solely to "pretrial matters" and "Mr. Berman's closing argument."

{¶ 16} Under Ohio law, "[t]he appellant bears the burden of demonstrating error by reference to the record of proceedings below, and it is the appellant's duty to provide the reviewing court with an adequate transcript."  *Ciura v. Carletti*, 7th Dist. No. 02-CA-212, 2003-Ohio-4460, ¶ 6, citing *Burrell v. Kassicieh*, 128 Ohio App.3d 226, 232 (3d Dist.1998), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).  Absent a trial transcript, "this court must presume regularity in the proceedings of any finding of fact made by the trial court."  *Calabrese v. Zmijewski*, 8th Dist. No. 86185, 2006-Ohio-2322, ¶ 10, citing *Knapp.  See also James v. Apel*, 11th Dist. No. 98-T-0089 (June 30, 1999) (In the absence of a trial transcript, a reviewing court "must presume the regularity of the proceedings and that the trial court correctly interpreted the facts.").  Where a transcript or a substitute statement of the evidence has not been made available, "an appellate court will presume that the judgment of the trial court was valid."  *New Waterford Bank v. Austin Agency*, 11th Dist. No. 94-T-5174 (Mar. 22, 1996), citing *Knapp* at 199.  A reviewing court, however, "can * * * analyze the legal conclusions reached by the trial court based on its factual findings."  *Id.*

{¶ 17} We initially consider appellant's contention that the trial court erred in its interpretation and application of the applicable statute of limitations.  Because we lack a full transcript of the bench trial, we note the following summary of the trial evidence as set forth in the trial court's decision and entry of July 10, 2017.  At trial, appellee called one witness, Michelle Fancher, appellee's "default and special servicing supervisor," while appellant testified on his own behalf.  (July 10, 2017 Decision & Entry at 3.)

{¶ 18} Fancher testified that appellee "is the holder of the Note" on the subject property.  (July 10, 2017 Decision & Entry at 3.)  During the bench trial, appellee "presented a copy of the Note, admitted as Plaintiff's Exhibit 2."  (July 10, 2017 Decision & Entry at 3.)

Appellee "does not possess the original note, which * * * Fancher states was lost sometime during the Second Lawsuit." (July 10, 2017 Decision & Entry at 3.) The certified copy of the note "contains a copy of a signature from Jeffrey Berman dated August 12, 2004 with a promise to pay Fifth Third the sum of $132,500 in monthly installments." (July 10, 2017 Decision & Entry at 3.) According to the testimony of Fancher, appellee is the holder of the note as well as the servicer of the note. The trial court found that the copy of the note "presented to the Court is a true and accurate copy of the original Note as it was scanned." (July 10, 2017 Decision & Entry at 4.)

{¶ 19} Appellee also presented at trial a "certified copy of the Mortgage as Plaintiff's Exhibit 4, which was signed by Mr. Berman in favor of Fifth Third on August 12, 2004." (July 10, 2017 Decision & Entry at 5.) The mortgage "was filed for record with the Franklin County Recorder's Office and contains no assignments or transfers." (July 10, 2017 Decision & Entry at 5.)

{¶ 20} The trial court observed that "Plaintiff's Exhibit 5 contains the payment history report for the Note at issue from the time of its origination to just before the trial date," and the report "details the debits and credits as part of the servicing of the loan." (July 10, 2017 Decision & Entry at 5.) According to that report, appellant "made his last payment on the Note on May 15, 2009. Since that time, and with interest accruing since the last payment, the current balance on the Note is $124,275.86." (July 10, 2017 Decision & Entry at 5.)

{¶ 21} On July 31, 2009, appellee "sent a Notice of Default * * * to Mr. Berman at '324 N Stanwood Rd., PO Box 9866, Columbus, OH 43209-1109.' (Plaintiff's Ex. 8)." (July 10, 2017 Decision & Entry at 5.) The notice of default "gave Mr. Berman '30 days' to cure the default from the date of the letter. Failure to cure the default would, according to the First Notice, 'result in acceleration of your loan and the foreclosure of the property.' " (July 10, 2017 Decision & Entry at 5.)

{¶ 22} The trial court noted that the dispositive issue in the first lawsuit was whether the first notice of default sent by appellee on July 31, 2009 "was sufficient to establish a proper notice of default under the terms of the Note and Mortgage." (July 10, 2017 Decision & Entry at 5.) The trial court's decision recited several provisions of the note regarding default and the manner in which notice was to be provided. Section 7 of the note at issue

provides in part: "Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address."

{¶ 23} At trial, appellant "testified he never reported a change of address to [appellee] prior to the First Notice," and also "admitted he argued in the First Lawsuit that the First Notice was an insufficient attempt to notify him of a default on his payments." (July 10, 2017 Decision & Entry at 7.) Further, appellee "conceded at trial that [appellant] did not report a change of address from the Property address to the post office box listed on the First Notice." (July 10, 2017 Decision & Entry at 7.)

{¶ 24} On April 8, 2013, appellee sent appellant a second notice of default letter. This letter, which was "identical in its substance as the First Notice, was sent to [appellant] at the Property address." (July 10, 2017 Decision & Entry at 7.)

{¶ 25} The trial court found, based on the evidence presented, that appellee "has established that [appellant] is in default of his obligation under the Note," and that appellant "admitted that he has not cured the default." (July 10, 2017 Decision & Entry at 7.) The court further found there was "no dispute that [appellee] met its conditions precedent, which includes sending a proper notice of default to [appellant] in April 2013 to accelerate the balance of the Note." (July 10, 2017 Decision & Entry at 7.)

{¶ 26} The trial court then addressed appellant's claim that the instant complaint on the note and mortgage was filed outside the statute of limitations period under R.C. 1303.16(A). In addressing this issue, the trial court initially considered evidence as to whether appellee properly accelerated the loan in 2009 when it mailed its first notice of default to a post office box address. The trial court noted there was "no doubt" appellee "attempted to accelerate the loan in 2009" when it mailed its first notice. (July 10, 2017 Decision & Entry at 11.) The court found, however, "by sending the notice to a post office box rather than to Mr. Berman's Property address," appellee's first attempted notice "was not sent in accordance with the terms of the Note and the Mortgage," and therefore the balance of the note "could not have become immediately due and payable in 2009." (July 10, 2017 Decision & Entry at 11.) The trial court noted that appellant, in fact, asserted such a defense in the first lawsuit and succeeded on appeal in arguing there remained an

issue of fact regarding whether appellee had provided him proper notice of default and intent to accelerate. Upon consideration of the testimony and evidence, the trial court concluded, "as a matter of fact and law," the note "was not accelerated in 2009." (July 10, 2017 Decision & Entry at 11.)

{¶ 27} The trial court next addressed whether appellee accelerated the loan in 2013. Specifically, the court addressed appellee's contention it properly accelerated the note in 2013 by sending its second notice of default to the property address, and that the statute of limitations period began to run 30 days after notice of default was mailed on April 8, 2013. Based on the evidence presented, the trial court found appellee "properly accelerated the loan in 2013" when the second notice of default, mailed on April 8, 2013, was sent to appellant at the property address, and that appellant "failed to cure the default within thirty (30) days as required by the notice." (July 10, 2017 Decision & Entry at 11.) The court therefore determined that the instant lawsuit filed in 2016, was "well within the applicable limitations period." (July 10, 2017 Decision & Entry at 11.)

{¶ 28} On appeal, the parties do not dispute the applicable statute of limitations in this case is the six-year statute of limitations period set forth under R.C. 1303.16. Specifically, R.C. 1303.16(A) states in part: "[A]n action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

{¶ 29} Appellant's contention the trial court erred in finding appellee's action timely under the statute of limitations is premised on his argument that the limitations period began running in 2009, at the time appellee purported to send its first notice of default. Specifically, appellant argues in his pro se brief that "the date to start the applicable statute of limitations would be 30 days after the date of this notice, which would have been August 30, 2009." (Appellant's Brief at 34.)

{¶ 30} Section 6(C) of the note pertains to notice of default, and states in part as follows: "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid * * *. That date must

be at least 30 days after the date on which the notice is mailed to me or delivered by other means."

{¶ 31} Section 7 of the note provides for the manner of giving notices under the contract, and states as follows:

> * * * Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

{¶ 32} Section 15 of the mortgage contains a similar notice provision, and states in part:

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. * * * The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time.

{¶ 33} Section 22 of the mortgage addresses acceleration, and states in part as follows:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument * * *. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. * * * If the default is not cured on or before the date specified in the notice, Lender

at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.

{¶ 34} To the extent appellant challenges the trial court's determination that the note was not accelerated in 2009, we again observe he has not provided this court with a complete transcript of the bench trial proceedings. As indicated above, the trial court found, based on the evidence presented at trial, the 2009 notice of default was not valid as appellee mailed the notice to a post office box rather than to the property address as required under the agreement. In support of that determination, the trial court cited testimony by appellant that he "never reported a change of address" to appellee prior to the first notice. (July 10, 2017 Decision & Entry at 7.) The trial court also noted appellee "conceded at trial that [appellant] did not report a change of address from the Property address to the post office box listed on the First Notice." (July 10, 2017 Decision & Entry at 7.)

{¶ 35} In light of the record on appeal, we accept the findings of the trial court that appellee's attempt to accelerate the debt in 2009 was ineffective for failure to satisfy a condition precedent, i.e., failure to provide proper notice under the agreement requiring the lender to send notice to the property address. *See, e.g.*, *Natl. City Mtge. Co. v. Richards*, 182 Ohio App.3d 534, 2009-Ohio-2556, ¶ 21 (10th Dist.), quoting *First Fin. Bank v. Doellman*, 12th Dist. No. CA2006-02-029, 2007-Ohio-222, ¶ 20 (" 'Where prior notice of default and/or acceleration is required by a provision in a note or mortgage instrument, the provision of notice is a condition precedent.' "); *United States Bank Natl. Assn. v. Weber*, 10th Dist. No. 12AP-107, 2012-Ohio-6024, ¶ 12 (holding "proper notice of default is a condition precedent to the lender's right to accelerate and foreclose").

{¶ 36} We also accept the trial court's findings that the second notice of default, mailed by appellee on April 8, 2013, was properly sent to appellant at his address, and appellant failed to cure the default within 30 days as required by the notice. Thus, the record supports a determination appellee complied with conditions precedent to acceleration of the loan and foreclosure following the second notice of default. As noted above, having found appellee properly accelerated the loan in 2013 when the second notice of default was sent to the property address, and appellant failed to cure the default, the trial

court concluded appellee's 2016 foreclosure action was filed "well within" the applicable six-year statute of limitations under R.C. 1303.16(A). (July 10, 2017 Decision & Entry at 11.) Based on the limited record before this court on appeal, and accepting the factual findings of the trial court, we find no error with the trial court's interpretation of the relevant provisions of the note and mortgage, as well as its determination that the present action was timely filed within the applicable statute of limitations period.

{¶ 37} Appellant also contends the trial court erred in its interpretation of Ohio's savings statute, R.C. 2305.19.[2] More specifically, appellant maintains the court erred in failing to apply the savings statute as a bar to appellee's action, asserting that the savings statute "does not necessarily hinge on the expiration of the applicable statute of limitations." (Appellant's Brief at 16.) According to appellant, after appellee's first complaint for judgment on the note and mortgage was voluntarily dismissed, appellee invoked its "one and only opportunity" to refile when it filed its second complaint, and therefore any further refiling was barred by the savings statute. (Appellant's Brief at 19.)

{¶ 38} We disagree, and find unpersuasive appellant's interpretation as to the applicability of the savings statute to the facts herein. Appellant's argument appears to be premised on the existence of a valid cause of action for judgment on the note and mortgage at the time of the initial lawsuit (i.e., a cause of action arising out of the first notice of default mailed by appellee to a post office box address in 2009). However, based on the findings of the trial court addressed above, the note was not accelerated in 2009 because proper notice of default and acceleration, a condition precedent to foreclosure, did not occur at that time. Rather, the earliest date a cause of action for foreclosure based on acceleration of the loan could have occurred was 30 days after the second notice of default was sent on April 8, 2013. *See Natl. City Bank v. Abdalla*, 131 Ohio App.3d 204, 211 (7th Dist.1999) ("Where the mortgage requires a specified period of time to elapse before instituting an action for foreclosure, no right of action would accrue until expiration of the stipulated time."). As also determined by the trial court, the statute of limitations did not begin to run

---

[2] R.C. 2305.19(A) states in part: "In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff * * * may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later."

prior to that accelerated due date.  Thus, because no cause of action accrued, nor did the statute of limitations begin to run, until proper notice of default and acceleration of the note (and, under the facts of this case, appellee filed and dismissed the first complaint before a cause of action existed), the savings statute had no application at the time appellee filed its second complaint seeking judgment on the note and mortgage, i.e., there was nothing to save at that time.  Accordingly, the trial court did not err in failing to apply the savings statute as a bar to the instant action.[3]

{¶ 39} Appellant further argues the trial court changed its position as to appellee's judicial estoppel and collateral estoppel arguments.  Specifically, appellant argues the trial court, in its decision and entry of January 19, 2017 (denying the parties' cross-motions for summary judgment), rejected appellee's argument that the doctrines of judicial estoppel and collateral estoppel were applicable to appellant's claim that acceleration of the note occurred in 2009.  According to appellant, the trial court changed its position during the June 2017 trial, allowing appellee to argue that collateral estoppel and/or judicial estoppel applied.

{¶ 40} Appellant's argument that the trial court reversed its position is not supported by the record or the trial court's decision and entry of July 10, 2017.  With respect to the bench trial proceedings, appellant has provided a portion of the transcript in which he argued, during closing argument, that the trial court "had previously ruled, I believe, that * * * their claim of collateral estoppel was not applicable."  (June 26, 2017 Tr. at 30.)  In response, the trial court stated in part: "[I]f that's the case, * * * obviously I'm not going to reverse myself.  I don't intend to."  (June 26, 2017 Tr. at 31.)  Apart from that exchange, appellant has not provided this court with any portion of the trial transcript indicating appellee raised the issue of estoppel during the bench trial.

{¶ 41} More significantly, the trial court's decision and entry finding in favor of appellee does not reference the doctrines of collateral estoppel and/or judicial estoppel.  As discussed above, the trial court, upon consideration of the evidence presented during the bench trial, determined as a matter of law that the note was not accelerated until 2013.  Thus, the record fails to support any contention the trial court somehow reversed its

---

[3] In light of our disposition of appellant's argument as to the applicability of the savings statute, we also find no merit to appellant's contention that the trial court erred in refusing to allow him to "fully present" his argument regarding the savings statue during the bench trial.  (Appellant's Brief at 11.)

position as to the effect of collateral estoppel or judicial estoppel in deciding the merits of the case.

{¶ 42} Appellant also argues the trial court erred by demonstrating "judicial bias" in favor of appellee. (Appellant's Brief at 52.) More specifically, appellant argues that bias was demonstrated based on (1) the trial court's failure to properly analyze the savings statute, (2) the court's contradictory rulings with respect to collateral and/or judicial estoppel, and (3) the court's ruling as to the issue of when acceleration occurred. Appellant also cites a comment by the trial court during appellant's closing argument, in which the court stated: "[M]y concern is that you're * * * trying to get a house for free. And you don't get a house for free." (June 26, 2017 Tr. at 25-26.)

{¶ 43} In general, under Ohio law, "an appellate court lacks jurisdiction to disqualify a judge * * * or to vacate a judgment on the basis of judicial bias." *Baker v. Progressive Ins.,* 6th Dist. No. L-15-1094, 2016-Ohio-1110, ¶ 15, citing *Beer v. Griffith,* 54 Ohio St.2d 440, 441-42 (1978). Ohio courts have recognized (primarily in the context of criminal proceedings) that a reviewing court does "have jurisdiction to review a claim of judicial bias that is alleged to result in a violation of a defendant's due process rights." *State v. Loudermilk,* 1st Dist. No. C-160487, 2017-Ohio-7378, ¶ 20. It has been noted that "[j]udicial bias is demonstrated by 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' " *Id.* at ¶ 21, quoting *State ex rel. Pratt v. Weygandt,* 164 Ohio St. 463, 469 (1956).

{¶ 44} As indicated, appellant points to several determinations by the trial court as evidence of bias. To the extent appellant disagrees with the trial court's rulings as to the merits of the case, including the court's findings as to the issues of acceleration of the note and applicability of the savings statute, such disagreement does not demonstrate judicial bias. *Cooke v. United Dairy Farmers, Inc.,* 10th Dist. No. 05AP-1307, 2006-Ohio-4365, ¶ 46 ("A judge's rulings of law are legal issues, subject to appeal, and are not by themselves evidence of bias or prejudice."). As to the trial court's comment during appellant's closing argument, the record indicates the court's reference to a "free" house was made in response to arguments by appellant regarding chain of custody of the note. Viewed in context, we do

not construe the trial court's isolated statement as evidence of judicial bias, nor do any other portions of the limited record on appeal demonstrate bias.

{¶ 45} Based on the foregoing, we find the trial court did not err in granting judgment in favor of appellee on the note and mortgage nor in granting appellee a decree in foreclosure on the subject property. Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.

_____