[Cite as *Jenkins v. Dragoo & Assocs., Inc.*, 2023-Ohio-4103.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Daryl Jenkins et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 22AP-564 |
| v. | : | (M.C. No. 2020CVF-4241) |
| Dragoo and Associates, Inc., | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 14, 2023

**On brief:** *Isaac Wiles & Burkholder, LLC*, and *Dale D. Cook*, for appellants. **Argued:** *Dale D. Cook*.

**On brief:** *Willis Law Firm, LLC, William L. Willis, Dimitrios G. Hatzifotinos, Solomon J. Parini, Clint B. Charnes*, and *Alexander H. Maxwell*, for appellee. **Argued:** *Alexander H. Maxwell*.

APPEAL from the Franklin County Municipal Court

LELAND, J.

{¶ 1} Plaintiffs-appellants, Daryl Jenkins and Zorica Louis-Fernand, appeal from a judgment of the Franklin County Municipal Court following a bench trial in which the court found against appellants on their claims in a landlord tenant dispute and found in favor of defendant-appellee, Dragoo and Associates, Inc., on its counterclaim for breach of contract for unpaid rent.

## I. Facts and Procedural History

{¶ 2} The following findings of fact are drawn primarily from the trial court's judgment entry of August 17, 2022, as well as relevant portions of the record. Appellee manages a complex of 334 townhomes. On September 22, 2017, appellant Daryl Jenkins

(individually "appellant Jenkins") signed a 6-month lease agreement with appellee for a residential unit located on Bridgeford Drive in Westerville, Ohio. The terms of the lease were "from September 22, 2017, through March 21, 2018, for $1,970.00 per month, with a deposit of $300.00." (Aug. 17, 2022 Entry at 1.)

{¶ 3} On January 8, 2020, appellants filed a complaint against appellee asserting claims for unlawful trespass, breach of quiet enjoyment, failure to perform maintenance and repairs, and return of security deposit. On March 2, 2020, appellee filed an answer as well as a counterclaim for breach of contract for unpaid rent.

{¶ 4} On June 6, 2022, the matter came before the trial court for a bench trial. Appellant Jenkins testified that he and his wife, appellant Zorica Louis-Fernand (individually "appellant Louis-Fernand"), "completed a Move-In Condition Form outlining needed repairs along with accepted 'AS-IS' conditions." (Aug. 17, 2022 Entry at 1.) Appellant Jenkins "claimed that none of the defects were corrected," and this claim was "countered by two maintenance tickets dated September 22 and 25, 2017, listing all the repairs being completed." (Aug. 17, 2022 Entry at 1.)

{¶ 5} Appellant Jenkins testified that appellee "entered the residence multiple times," but that "[appellant Jenkins] never gave his personal consent to enter the residence." (Aug. 17, 2022 Entry at 2.) Appellant Jenkins "claimed the colored tags used by [appellee] to notify him of their plan to enter were insufficient, in that they were hung at the garage door which he never used to enter the residence," and he "also took issue with the debris and footprints left on the carpet when maintenance personnel entered the residence." (Aug. 17, 2022 Entry at 2.)

{¶ 6} Appellant Jenkins testified regarding "an incident where the mattress was ajar, and a drawer of a dresser located in the garage had been pulled out and left on the floor." (Aug. 17, 2022 Entry at 2.) Although "no items were missing," he contacted police. (Aug. 17, 2022 Entry at 2.) Appellant Jenkins "also stated * * * he demanded from management that he must be present at any time maintenance personnel would be entering the residence." (Aug. 17, 2022 Entry at 2.)

{¶ 7} According to appellant Jenkins, appellee's "assessment of a $75.00 fine for having a dog in the apartment periodically when his wife visited was egregious,

notwithstanding the fact the lease prohibited pets," and he "specifically took exception to the notice management gave him that they would enter 'on/or after' a specific date to inspect for evidence of a pet without his permission." (Aug. 17, 2022 Entry at 2.) Appellant Jenkins stated he "raised all of his concerns in a letter to the corporate office, but was not satisfied with the response." (Aug. 17, 2022 Entry at 2.) Appellant Jenkins placed his rent payments into an escrow account and ultimately "vacated the residence on January 30, 2018, without giving a required 30-day notice." (Aug. 17, 2022 Entry at 3.)

{¶ 8} Appellant Louis-Fernand testified regarding "an incident when she had to stop maintenance personnel from entering" the residence. (Aug. 17, 2022 Entry at 3.) She "emphasized her preference that personal notice for maintenance should be given directly through email or text messaging." (Aug. 17, 2022 Entry at 3.)

{¶ 9} Appellee's property manager, Mike Snyder, testified that "24-hour notices are always provided prior to maintenance personnel entering any residence in the apartment complex." (Aug. 17, 2022 Entry at 3.) Snyder related that appellee's notices "always include the date maintenance personnel would be entering, the reason they would be entering, and that the notices are always posted on the garage doors of all the 300-plus units in the apartment complex." (Aug. 17, 2022 Entry at 3.) At trial, appellee "provided a copy of the notice to change the furnace filter and to inspect smoke detectors that went to all residences." (Aug. 17, 2022 Entry at 3.) Snyder "stated that maintenance personnel were never permitted to enter the residence [of appellant Jenkins] to do the required work except for addressing the initial list of defects when [appellant Jenkins] moved in." (Aug. 17, 2022 Entry at 3.)

{¶ 10} Snyder "presented a letter written by his counsel to [appellants'] counsel addressing the dog and which gave notice to [appellants] that they must provide access to the property to allow for required maintenance (filters and smoke alarms) consistent with the Revised Code or [his] tenancy would be terminated in 30-days." (Aug. 17, 2022 Entry at 3.) He also "presented a copy of the No Pet Declaration that was signed by [appellant Jenkins] on September 22, 2018." (Aug. 17, 2022 Entry at 3.)

{¶ 11} The trial court rendered a decision on August 17, 2022 concluding appellants failed to demonstrate a violation of Ohio law on the part of appellee and finding in favor of appellee on its counterclaim for failure to pay rent in the amount of $1,658.

## II. Assignments of Error

{¶ 12} Appellants appeal and assign the following four assignments of error for our review:

> [I.] The trial court erred in granting judgement against Zorica Fernand for unpaid rent as she was not on the lease.
>
> [II.] The trial court erred in its finding of reasonable notice for the multiple entries into Daryl Jenkins' apartment as the method of notice was not reasonably calculated to be received by him.
>
> [III.] The trial court finding that the lease was broken without cause was against the manifest weight of the evidence as the requested repairs were not made within a reasonable time and Mr. Jenkins did not unreasonably restrict access to his apartment.
>
> [IV.] The trial court erred in failing to find a violation of R.C. 5321.04(B) and 5321.04(A)(8) as there were multiple entries on one notice and the unauthorized entries were accomplished in an unreasonable manner without proper notification to Mr. Jenkins.

## III. Analysis

{¶ 13} We will consider appellants' assignments of error out of order, initially addressing the second, third, and fourth assignments of error together, as they are interrelated. Under these assignments of error, appellants assert the trial court erred in: (1) finding appellee provided reasonable notice for multiple entries into appellant Jenkins' apartment, (2) finding the lease was broken without cause, and (3) failing to find a violation of R.C. 5321.04(B) and (A)(8). We first address appellants' contention the trial court erred in finding appellee provided reasonable notice for entries into the residence and their related argument that the court erred in failing to find violations under R.C. 5321.04(B) and (A)(8).

{¶ 14} Generally, "[i]n reviewing a civil appeal from a bench trial, this court applies a 'manifest weight standard of review.' " *Fifth Third Mtge. Co. v. Berman*, 10th Dist. No. 17AP-563, 2019-Ohio-1068, ¶ 14, quoting *Benton Village Condominium Owners Assn., Inc. v. Bridge*, 8th Dist. No. 106892, 2018-Ohio-4896, ¶ 13. *See also Walker v. Hartford on the Lake, L.L.C.*, 10th Dist. No. 16AP-271, 2016-Ohio-7792, ¶ 27 ("In reviewing a decision reached at a bench trial we utilize a manifest weight standard."). Under this standard, "[a] reviewing court 'will not reverse the judgment as being against the manifest weight of the evidence if some competent, credible evidence supports all the essential elements of the case.' " *Berman* at ¶ 14, quoting *Huntington Natl. Bank Successor v. Miller*, 10th Dist. No. 14AP-586, 2016-Ohio-5860, ¶ 13, citing *C.E. Morris Co. v. Foley Constr. Co., Inc.*, 54 Ohio St.2d 279, 280 (1978). However, "where an appeal from a bench trial presents a question of law, we review such questions de novo." *Marshall v. Snider-Blake Business Serv., Inc.*, 10th Dist. No. 21AP-700, 2022-Ohio-1869, ¶ 13, citing *Coomer v. Opportunities for Ohioans with Disabilities*, 10th Dist. No. 21AP-158, 2022-Ohio-387, ¶ 13.

{¶ 15} Under Ohio law, "[d]isputes between a landlord and tenant are governed by R.C. 5321.05, which is commonly referred to as the Ohio Landlord-Tenant Act." *Levine v. Kellogg*, 10th Dist. No. 21AP-338, 2022-Ohio-3440, ¶ 9, citing *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 7, citing *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 26 (1985). It has been observed that "the Landlord-Tenant Act balances the legitimate rights of each party." *T.K.D. Ents. v. Zimmerman*, 4th Dist. No. 97CA44 (July 2, 1998).

{¶ 16} R.C. 5321.04 sets forth obligations of a landlord who is a party to a rental agreement. Pursuant to R.C. 5321.04(A)(8), a landlord is required, "[e]xcept in the case of emergency or if it is impracticable to do so, [to] give the tenant reasonable notice of the landlord's intent to enter and enter only at reasonable times." Under that provision, "[t]wenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary." R.C. 5321.04(A)(8). R.C. 5321.04(B) states in part that if a landlord "makes an entry in violation of division (A)(8) * * *, makes a lawful entry in an unreasonable manner, or makes repeated demands for entry otherwise lawful that have the effect of harassing the tenant, the tenant may recover actual damages * * *, obtain injunctive relief

* * *, and obtain a judgment for reasonable attorney's fees, or may terminate the rental agreement."

{¶ 17} R.C. 5321.05 delineates the obligations of a tenant under a rental agreement. R.C. 5321.05(B) states in part: "The tenant shall not unreasonably withhold consent for the landlord to enter into the dwelling unit in order to inspect the premises, make ordinary, necessary, or agreed repairs, decorations, alterations, or improvements." Thus, R.C. 5321.05(B) "confers on the landlord a right of access to the property for * * * making needed or agreed repairs." *T.K.D. Ents.*

{¶ 18} In the present case, the trial court found against appellants on their claims that appellee failed to provide proper notice of entry and that it acted in violation of R.C. 5321.04(A)(8) and (B). Specifically, the court held that, pursuant to R.C. 5321.05(B), appellee was entitled to enter the unit to make "such necessary repairs as changing furnace filters and checking smoke alarms." (Aug. 17, 2022 Entry at 4.) The court further found appellants "unreasonably restricted access to the premises and expected unreasonable accommodations." (Aug. 17, 2022 Entry at 4.) The trial court deemed appellants' "position that the exact time of entry had to be given, that [appellant] Jenkins had to be present, and that direct text/email messaging was required is not consistent with the law." (Aug. 17, 2022 Entry at 4.) Rather, the court concluded, "[t]he record reflects that [appellee] gave adequate and reasonable notice to [appellants] pursuant to the lease and Ohio law," and that appellee "was not required * * * to provide personal notices or other special accommodations requested by [appellants]." (Aug. 17, 2022 Entry at 4-5.)

{¶ 19} We initially note that, during the bench trial of this matter, counsel for appellants did not dispute the fact appellee posted a 24-hour notice of its intent to enter the residence to perform maintenance or inspections. Specifically, counsel acknowledged appellants "were given the notice within the 24-hour period. The 24 hours is not a question." (Tr. at 93.) Counsel argued, however, "[o]ur contention would be that [appellee] cannot enter a premises without consent and shouldn't be entering the premises that are unoccupied unless they asked for specific permission from the tenant." (Tr. at 93-94.) Appellants argue on appeal that the "antiquated practice" of posting notice on a garage door

"was not reasonably calculated to reach [appellant] Jenkins and was thus unreasonable as a matter of law." (Appellants' Brief at 14.)

{¶ 20} The evidence at trial indicates appellee posted notices for work to be performed (i.e., for repairs, to change furnace filters, inspect smoke detectors) by placing a letter in an envelope and posting it on the garage door of each of appellee's more than 300 rental units, including the unit rented by appellant Jenkins. Trial exhibits admitted into evidence included notices posted by appellee on appellant Jenkins' rental unit dated (respectively) October 24, 2017 (plaintiff's exhibit E), January 9, 2018 (plaintiff's exhibit L), and January 15, 2018 (plaintiff's exhibit M); each of the respective notices indicated that maintenance work was scheduled to occur the following day.

{¶ 21} During his testimony, appellant Jenkins did not dispute receiving the notice dated October 24, 2017, which stated in part that appellee's staff "will enter your [residence]" on Wednesday, October 25, 2017 "to complete your furnace filter change and smoke detector inspections." (Pltfs.' Ex. E.) Appellant Jenkins testified, however, "I had not given my consent." (Tr. at 17.) Appellant Jenkins further stated he did not discover the notice until October 25, 2017 although he acknowledged, during cross-examination, that he did not know "when it was [placed] on the door." (Tr. at 40.)

{¶ 22} Regarding appellants' consent argument, we note R.C. 5321.04(A)(8) does not contain language restricting a landlord's right to entry only upon consent of the tenant. Rather, the statute requires "reasonable notice" of a landlord's intent to enter and "only at reasonable times." R.C. 5321.04(A)(8). Under Ohio law, 24-hour notice is "presumed to be reasonable." *Ayres v. Simmons*, 4th Dist. No. 93 CA 827 (Sept. 30, 1993), citing R.C. 5321.04(A)(8).

{¶ 23} As to the issue of whether the notice was reasonable, the trial court heard testimony that appellee's standard practice was to post notice of entry near the garage door of each rental unit. Snyder, appellee's property manager, testified that notice of intent to enter is "put * * * in writing with the date the notice was delivered, the date that maintenance will be entering, the reason they'll be entering, and then it is posted on a correspondence clip on the trim to the left of the garage door on every unit." (Tr. at 74.) Snyder stated that, in the course of his 14 years of experience as property manager, the best

method of providing notice to residents has been to post the notice beside the garage door "because every home has a garage; and by putting notices on doors, people never saw them, so we put them on the garage -- on the trim next to the garage door, so when people are pulling in, they see them." (Tr. at 74.)

{¶ 24} In arguing that posting a notice on a garage door constitutes an "antiquated method," appellants cite to *Greene v. Lindsey*, 456 U.S. 444 (1982), a case involving the posting of an eviction notice to public housing tenants in a forcible entry and detainer action. The issue in *Greene* involved due process concerns based on evidence that posting notice of summons on a door could be easily removed by others, i.e., based on testimony presented in that case indicating eviction notices posted by process servers were removed from apartment doors by children and other tenants. The holding in *Greene*, however, was limited to "the circumstances of this case," and the Supreme Court of Ohio recognized that "posting notice on the door of a person's home would, in many or perhaps most instances, constitute not only a constitutionally accepted means of service, but indeed a singularly appropriate and effective way of ensuring that a person who cannot conveniently be served is actually apprised of proceedings against him." *Id*. at 452-53.

{¶ 25} *Greene*, therefore, does not stand for the proposition that posting on a door (e.g., a garage door) is an insufficient method of notice, as recognized by the Supreme Court and other Ohio appellate courts. *See Cincinnati Metro. Hous. Auth. v. Morgan*, 104 Ohio St.3d 445, 2004-Ohio-6554, ¶ 9 (distinguishing *Greene* on the basis there was "no evidence that tenants in the area have experienced the removal of notices from apartment doors," and holding the notice provision of Ohio's forcible entry and detainer statute (R.C. 1923.04(A)) "permits a landlord to post a three-day notice to vacate on the outside of the door to the premises"). *See also Castlebrook Apts. v. Ballard*, 2d Dist. No. 22421, 2008-Ohio-4633, ¶ 15, citing *Cincinnati Metro*. at syllabus ("At trial, Castlebrook proved * * * that notice was properly served * * * by posting a notice on the door of the apartment.").

{¶ 26} In the present case, appellee introduced exhibits at trial indicating it provided at least 24-hour notice of entry by posting a letter on each garage door of the residential units, and appellee provided testimony that such method was utilized based on its experience that residents were most likely to observe the notice letters as they pulled into

their garage. The trial court, based on consideration of the statutory provisions at issue and the evidence presented, concluded appellee provided "adequate and reasonable notice" to appellant Jenkins. (Aug. 17, 2022 Entry at 4.) Upon review, we agree that, as a matter of law, the notice was reasonable and in accordance with statutory requirements. Accordingly, the trial court did not err in failing to find a violation of the notice requirements of R.C. 5321.04(A).

{¶ 27} We next address arguments raised by appellants under the third and fourth assignments of error; both assignments of error challenge, in large part, certain factual and credibility determinations of the trial court as being against the manifest weight of the evidence. Under the third assignment of error, appellants argue the trial court's finding that the lease was broken without cause was against the weight of the evidence based on their contention that requested repairs were not timely made and that they did not unreasonably restrict access to the residence. Appellants assert, under the fourth assignment of error, that multiple entries were made on a single notice.

{¶ 28} In support of their argument under the third assignment of error, appellants point to their own trial testimony that repairs documented on a move-in sheet were not timely made and that they did not unreasonably hinder appellee's efforts to gain access to the residence. Appellants maintain they had ample justification in terminating the lease, and essentially contend the trial court should have given more weight to their testimony on these issues.

{¶ 29} The trial court, however, was confronted with conflicting testimony and evidence as to the issues of whether repairs were properly made and whether appellants unreasonably withheld consent to allow appellee to perform repairs and maintenance, and it is clear the trial court credited the testimony and evidence of appellee over that presented by appellants. As noted by the trial court in its decision, appellee countered appellants' claim that repairs were not addressed with evidence, including work maintenance slips, indicating requested work was performed. The trial court also found, on disputed evidence, that appellants unreasonably restricted access to the residence.

{¶ 30} During the bench trial, the trial court heard testimony from appellee's property manager, Snyder, regarding interactions he had with appellants during the terms

of the lease; on direct examination, Snyder identified defendant's exhibit 5 as notes he "typed out immediately after the residents left my office." (Tr. at 77.) One of the notes related that in September 2017, on the date appellant Jenkins signed his lease, appellant Jenkins submitted a "move-in inspection form" and "a work order was written." (Tr. at 78.) Snyder documented that appellant Jenkins "verbally provided permission to enter," and "[t]he work order was completed September 25th, 2017, at approximately 1:20 p.m." (Tr. at 78.) Included among the exhibits admitted at trial were two maintenance tickets, dated September 22 and 25, 2017, containing handwritten checkmarks within a box beside the notation "[w]ork [c]ompleted," and which also reflect handwritten notations describing the work performed on lines following the word "[r]emarks." (Pltfs.' Ex. D.) Snyder testified the maintenance slips indicate the requested work was performed.

{¶ 31} Snyder further documented that on October 24, 2017, "at approximately 12:00 p.m[.], a 24-hour notice to enter, from management, was posted on the correspondence clip on the trim around the garage door * * * noting our intention to enter on October 25th, 2017, for preventative maintenance including changing furnace filters." (Tr. at 78-79.) Snyder's notes stated that "[o]n October 25th, at approximately 1:00 p.m., our lead maintenance technician knocked on the door of [appellant Jenkins' residence]. When no one answered, he knocked again. At that point, he heard a dog bark." (Tr. at 80.) Testimony at trial indicated appellant Louis-Fernand was inside the residence when the maintenance worker knocked on the door, and she testified she "put [her] foot in the door so the maintenance -- I actually prevented him from physically coming in." (Tr. at 62.)

{¶ 32} Regarding the issue of unpaid rent, Snyder testified appellant Jenkins moved out of the residence prior to termination of the lease, and that rent was not paid for the month of February (2018) and for 18 days of March (2018). Snyder further testified that appellant Jenkins did not provide notice of intent to vacate as required under the terms of the lease. Appellant Jenkins testified he gave appellee notice he was vacating the residence on the date he moved out (January 30, 2018), and he acknowledged during cross-examination that he did not pay rent for the remainder of the lease term (i.e., for the month of February and part of March). Appellant Jenkins stated he did not "recall" whether the lease required him to provide 30-days written notice of intent to vacate. (Tr. at 48.)

{¶ 33} As the finder of fact, the trial court was required to evaluate the credibility of witnesses and resolve questions of fact. *See, e.g., D.D. v. B.B.*, 10th Dist. No. 20AP-509, 2022-Ohio-1032, ¶ 35 (where case "largely turned on the testimony of appellant and appellee," trial court "was required to determine their credibility in evaluating that testimony"). Further, "[i]n a bench trial, it remains that 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Wallace v. Ferguson*, 5th Dist. No. 12-CA-5, 2012-Ohio-4839, ¶ 17, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Under Ohio law, " '[i]n determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trial court are correct.' " *Berman* at ¶ 14, quoting *Huntington Natl. Bank v. Miller*, 10th Dist. No. 14AP-586, 2016-Ohio-5860, ¶ 13, citing *Seasons Coal Co.* at 80.

{¶ 34} As indicated, the trial court heard conflicting testimony and evidence during the bench trial as to whether requested repairs were performed and whether the tenant unreasonably withheld consent for maintenance personnel to perform necessary work, and the court resolved those conflicts in favor of appellee. In this respect, "the weight to be afforded evidence and witness credibility are issues within the province of the trial court" and, "as the trier of fact," the court was "free to believe the evidence and testimony" submitted by appellee over that of appellants. *Stittsworth* at ¶ 48. Upon review, we conclude the record contains competent, credible evidence to support the trial court's factual findings in rendering judgment in favor of appellee on its counterclaim for unpaid rent and in its determination the lease was terminated by the tenant without cause.

{¶ 35} Appellants also contend there was evidence of multiple entries made on one notice regarding an inspection for the presence of a pet; according to appellants, such conduct constitutes a violation of R.C. 5321.04(A)(8). In support of their claim that multiple entries occurred, appellants point to plaintiffs' exhibit H, a document from appellee's property manager to appellant Jenkins, dated October 26, 2017, noting that maintenance staff "recently attempted to complete a furnace filter replacement service in your [residence]," at which time "they noticed that you currently have a dog in your

[residence]." (Pltfs.' Ex. H.)  The letter further stated in part: "This letter shall also serve as notice that management will enter your [residence] on and/or after Friday, October 27, 2017 to inspect for evidence of the pet." (Pltfs.' Ex. H.)

{¶ 36} While appellants assert there was more than one entry by appellee as to the notice regarding a pet, the record reflects that trial testimony on this issue was limited. Defendant's exhibit 5 references the fact that a maintenance worker discovered a pet at the residence on October 25, 2017.  As previously noted, the record indicates appellee provided 24-hour notice (on October 24, 2017) for the attempted entry on October 25, 2017, in order for a maintenance worker to replace furnace filters and inspect smoke alarms.  Thus, such notice of entry was prior to, and unrelated to, the notice regarding a pet provided on October 26, 2017.  Defendant's exhibit 5 further references that on October 30, 2017, Snyder conducted an inspection, accompanied by a police officer, to check for the presence of a pet (and noting that a maintenance worker had been denied access on October 25, 2017 to perform preventative maintenance).

{¶ 37} As to the entry on October 30, 2017, the record indicates appellant Jenkins received at least 24-hours' notice in writing regarding the issue of a pet.  On cross-examination, counsel for appellants questioned Snyder whether "multiple entries [were] ever made with that single notice?"  Snyder responded: "No." (Tr. at 86.)  Snyder further testified that appellee provided a 24-hour written notice to appellants prior to each entry into appellant Jenkins' residence.  Here, despite appellants' contention that multiple entries were made on the same notice regarding the pet, the evidence presented on this issue was, at best, conflicting and inconclusive, and we find no error by the trial court in failing to find a violation of R.C. 5321.04(A)(8).

{¶ 38} Based upon the foregoing, appellants' second, third, and fourth assignments of error are without merit and are overruled.

{¶ 39} Finally, we address the first assignment of error, in which appellants assert the trial court erred in granting judgment against appellant Louis-Fernand.  Appellants note the trial court's entry granting judgment in favor of appellee in the amount of $1,658 for unpaid rent on its counterclaim arguably purports to render judgment against "[p]laintiffs," i.e., not only appellant Jenkins but also against appellant Louis-Fernand.

(Aug. 17, 2022 Entry at 5.) Appellants contend appellant Louis-Fernand was not on the lease, and there is no evidence she assumed the lease or the obligations under it.

{¶ 40} In response, appellee argues appellant Louis-Fernand was an intended beneficiary of the lease agreement and assumed the obligations under the lease. According to appellee, appellant Louis-Fernand testified that she picked up the keys with her husband and was frequently a guest at the residence.

{¶ 41} Generally, "only a party to a contract or an intended third-party beneficiary thereof may be named as a defendant in an action for breach of a contract." *Kirby v. Cole*, 163 Ohio App.3d 297, 2005-Ohio-4753, ¶ 11 (3d Dist.). Under Ohio, "the 'intent to benefit' test" is used "to determine whether a third-party is an intended beneficiary." *Boatwright v. Penn-Ohio Logistics*, 7th Dist. No. 12 MA 39, 2012-Ohio-6238, ¶ 53. Such test "requires the promisee to have an intent to benefit a third party; the third party cannot merely be an 'incidental beneficiary.' " *Id.*, quoting *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, ¶ 11-12.

{¶ 42} In *Huff*, the Supreme Court observed that "[c]ourts generally presume that a contract's intent resides in the language the parties chose to use in the agreement." *Huff* at ¶ 12, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). Further, " '[o]nly when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions.' " *Id.*, quoting *Shifrin* at syllabus. Thus, Ohio law "requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party." *Id.* In general, "the parties' intention to benefit a third party will be found in the language of the agreement." *Id.*

{¶ 43} In the present case, the rental agreement, dated September 22, 2017, states it is "between DRAGOO AND ASSOCIATES, INC." and "Daryl Jenkins," and a line on the lease for "total occupancy" has the typed number "1." (Emphasis sic.) (Pltfs.' Ex. A at 1.) Appellant Jenkins' signature appears on the line above "Signature of Resident." (Pltfs.' Ex. A at 6.) Appellant Louis-Fernand is not named in the agreement, nor did she sign the rental

contract. Thus, appellant Louis-Fernand was not a party to the lease agreement, nor do any of the terms indicate the lease was entered directly for her benefit.

{¶ 44} Because the language of the contract is clear and unambiguous, resort to extrinsic evidence as to the parties' intent is unnecessary. We note, however, even assuming extrinsic evidence was relevant, the evidence presented at trial indicated appellant Louis-Fernand resided in Chicago and visited her husband on alternate weekends in Ohio. Here, the evidence does not suggest the parties to the lease agreement intended to directly benefit appellant Louis-Fernand, and any benefit she derived in visiting the residence was merely incidental to the agreement. Further, the fact that appellant Louis-Fernand accompanied her husband to pick up keys to the residence is insufficient, as a matter of law, to show intent by the parties to directly benefit her at the time the lease agreement was executed, nor is the spousal relationship alone sufficient to show assumption of liability on a contract. *See*, *e.g.*, *Estep v. Elam*, 2d Dist. No. 18750 (Oct. 12, 2001), citing *Simon v. Zipperstein*, 32 Ohio St.3d 74 (1987) ("Relatives of a contracting party are not in privity of contract simply because of their familial relationship to a party to the contract."). Accordingly, we find unpersuasive appellee's assertion that appellant Louis-Fernand was an intended beneficiary of the lease and that she assumed the obligation to pay rent along with appellant Jenkins.

{¶ 45} Because the decision of the trial court renders judgment against "[p]laintiffs" as a result of "[p]laintiffs breaking the lease," appellants' first assignment of error is well-taken and is sustained. (Aug. 17, 2022 Entry at 5.) We therefore remand this matter to the trial court to modify its judgment to remove the monetary award against appellant Louis-Fernand and to reflect that the award in favor of appellee on its counterclaim for unpaid rent is entered solely against appellant Jenkins.

## IV. Conclusion

{¶ 46} Based on the foregoing, appellants' first assignment of error is sustained, appellants' second, third, and fourth assignments are overruled, the judgment of the Franklin County Municipal Court is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part;*
*reversed in part;*
*and cause remanded with instructions.*

BEATTY BLUNT, P.J., and JAMISON, J., concur.

———————

JAMISON, J., concurring.

{¶ 47} Because the landlord's entry with law enforcement was not raised, I write separately.

{¶ 48} I would find that the landlord invaded the privacy of appellant and interfered with his quiet enjoyment of the apartment when he went in with law enforcement. This is a factor that I would have considered in determining damages. Although I concur with the majority decision, I think the landlord should be instructed against unlawful search of appellant's residence.

{¶ 49} I take no issue with the recitation of facts, therefore, I adopt them fully. R.C. 5321.01(A) defines a tenant as "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." R.C. 5321.04(A) sets forth obligations to which the landlord must abide by and include: "(7) Not abuse the right of access conferred by division (B) of section 5321.05, of the Revised Code; (8) Except in the case of emergency or if it is impracticable to do so, give the tenant reasonable notice of the landlord's intent to enter and enter only at reasonable times. Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary."

{¶ 50} There is no dispute that the landlord gave notice to enter or that on at least one occasion a dog was heard in appellant's residence. *Angello v. United States*, 269 U.S. 20, 33 (1925), explicitly decided that "[b]elief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are * * * unlawful notwithstanding facts unquestionably showing probable cause." *Id.* at 33. *See Chapman v. United States*, 365 U.S. 610, 613 (1961). Tenants cannot deny the landlord entry if reasonable purpose and/or reasonable notice is provided by the landlord. The entry to a tenant's apartment to perform an

investigative search, for a dog on the premises, accompanied by law enforcement, is not the anticipated reasonable purpose.

{¶ 51} Landlords may enter if there is an emergency, to inspect the premises, to make necessary repairs, or to show the property to prospective tenants or buyers. The landlord may have believed that he was inspecting the premises for the presence of a dog, but there is no right for a landlord to grant entry to law enforcement. He did not give notice to the tenant that law enforcement would be accompanying him. "[A] landlord cannot validly consent to the search of a tenant's apartment for Fourth Amendment purposes." *State v. Norman*, 12th Dist. No. CA2014-02-033, 2014-Ohio-5084, ¶ 31. *See Chapman*; *State v. Callan*, 8th Dist. No. 95310, 2011-Ohio-2279, ¶ 18. The landlord would probably argue that he was searching for a dog, but he nevertheless gave consent for law enforcement to enter and search with him.

{¶ 52} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 53} Because I believe appellant's rights were violated when the landlord called law enforcement to enter the apartment went beyond the search of common areas, I concur in the decision but write separately.