[Cite as *Tackle Constr. Group, L.L.C. v. Pedtke Ents., Inc.*, 2018-Ohio-1859.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

TACKLE CONSTRUCTION GROUP,    :
LLC.    :
   :    Appellate Case No. 27813
      Plaintiff-Appellant    :
   :    Trial Court Case No. 16-CVF-01782
v.    :
   :    (Civil Appeal from
PEDTKE ENTERPRISES, INC., DBA    :     Municipal Court)
SERVEPRO OF NORTHWEST    :
DAYTON    :

      Defendant-Appellee

. . . . . . . . . . .

# O P I N I O N

Rendered on the 11th day of May, 2018.

. . . . . . . . . .

STEPHEN E. KLEIN, Atty. Reg. No. 0014351, 124 W. Main Street, Troy, Ohio 45373
      Attorney for Plaintiff-Appellant

JONATHON L. BECK, Atty. Reg. No. 0076709, and CHRISTINE N. FARMER, Atty. Reg.
No. 0093824, 130 W. Second Street, Suite 1500, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Tackle Construction Group, LLC appeals the amount that the trial court granted Pedtke Enterprises, Inc., dba Servpro of Northwest Dayton, as a set-off from the amount that it owes Tackle for construction work on multiple projects. We conclude that the evidence supports the set-off amount, so we affirm.

## I. Background

**{¶ 2}** Servpro does disaster clean-up, performing clean-up and restoration services to damaged structures. It often hires subcontractors to work on restoration projects. Tackle is one such subcontractor, and Servpro has hired it to perform construction work on many projects.

**{¶ 3}** Tackle filed suit against Servpro in December 2016, claiming that Servpro owed it $6,320.13 for work that Tackle had done on five different projects—Upper Trent Way, Holman, Peeks, Adams, and Kimball—either on account or under a theory of unjust enrichment. Tackle's complaint asks for judgment in this amount, costs, and "statutory interest from and after judgment." Servpro admits in its answer that it owes Tackle money on the Upper Trent Way, Holman, Peeks, and Adams projects, though Servpro disputes the amount that it owes on the last one. But Servpro denies that it owes Tackle anything for the Kimball project. Instead, Servpro claims that it is entitled to a set-off for the profit that it lost because Tackle failed to complete work on the project. Servpro also asserts counterclaims against Tackle.[1]

---

[1] The first two counterclaims allege unjust enrichment on the Adams project and on another project (Easton/Oxford). The third and fourth counterclaims relate to the Kimball project. One claim alleges that Tackle breached a contract to perform construction work on the Kimball project by failing to complete the work. The other claim alleges that Tackle was unjustly enriched on the project.

{¶ 4} A hearing was held in July 2017 before a magistrate at which Peter Elizondo, Tackle's owner, and Brian Pedtke, Servpro's owner, testified. The magistrate found that the parties do not dispute that Servpro owes Tackle a total of $1,083.01 for the Upper Trent Way, Holman, and Peeks projects. And on the Adams project, the magistrate agreed with Tackle that Servpro owed it $5,118.63. As to the Kimball project, which involved the restoration of a house, the magistrate found that the parties agreed that Servpro had hired Tackle to do $8,120.66 worth of work on the project, the amount that Tackle invoiced Servpro, and that Servpro is entitled to a credit of $6,616.81 because Tackle completed only some of the invoiced work. They also agreed that Servpro had paid Tackle $2,000 for the project. And they agreed that after Tackle left the Kimball project, the homeowner fired Servpro before Servpro could finish the restoration. But they disagreed on whether Tackle's failure to complete its work was wrongful and on whether it was Tackle's failure that caused Servpro to lose the project. While Tackle admitted that it did not complete the work, it denied that it did so wrongfully. Tackle said that it left the Kimball project because Servpro refused to "front" Tackle money to buy baseboard that Tackle had agreed to install in the house. Servpro maintained that it had no obligation to pay for the baseboard. The magistrate agreed with Servpro and found that Tackle's failure to complete its work was wrongful. The magistrate also found that it was because Tackle failed to finish that Servpro lost the Kimball project. Servpro claimed that as a result of losing the project, it lost $3,421.08 in expected profit and overhead. The magistrate agreed and deducted this amount from what Servpro owed Tackle. Consequently, instead of Servpro owing Tackle money on the Kimball project, the magistrate found that Tackle

owed Servpro $3,917.23.[2]

{¶ 5} In sum, then, for all the projects at issue, the magistrate found that Servpro owed Tackle $2,284.41.[3] The magistrate recommended that judgment for Tackle be entered for that amount plus statutory interest from the date of judgment and costs. The magistrate also recommended that Servpro's counterclaims be dismissed.

{¶ 6} Tackle filed objections to the magistrate's decision with the trial court. The first four objections concerned the magistrate's findings related to the Kimball project: that Servpro was not obligated to pay for the baseboard, that Tackle's failure to complete its work was wrongful, that Tackle's failure to finish caused Servpro to be fired by the homeowner, and that Servpro lost $3,421.08 on the project. Tackle's final objection was that the magistrate failed to award prejudgment interest.

{¶ 7} After independently reviewing the objections, the trial court agreed with the magistrate's findings and conclusions and adopted the magistrate's decision, overruling Tackle's objections. The court entered judgment for Tackle in the amount of $2,284.41 plus court costs and statutory interest from the date of judgment.

{¶ 8} Tackle appealed.

## II. Analysis

{¶ 9} Tackle assigns two errors to the trial court. The first argues that the finding that Tackle owes Servpro $3,917.23 on the Kimball project is against the manifest weight

---

[2] This is the invoice amount ($8,120.66) minus the credit for work not done ($6,616.81) minus the amount that Servpro had paid Tackle ($2,000) plus the amount that Servpro lost on the project ($3,421.08).

[3] This is the amount owed on the Upper Trent Way, Holman, and Peeks projects ($1,083.01) plus the amount owed on the Adams project ($5,118.63) minus the amount that Tackle owed Servpro on the Kimball project ($3,917.23).

of the evidence. The second assignment of error argues that Tackle is entitled to prejudgment interest.

## A. The Kimball project findings

{¶ 10} The first assignment of error states:

THE TRIAL COURT'S JUDGMENT WAS, PURSUANT TO APP.R. 12(C)(1), AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO THE FINDING OF FACT THAT PLAINTIFF-APPELLANT'S $6,201.64 AWARD SHOULD BE REDUCED BY $3,917.23.

Tackle challenges four findings on the Kimball project: (1) that Servpro was not required to purchase the baseboard, (2) that Tackle's failure to complete its work was wrongful, (3) that Tackle's failure to finish caused Servpro to be fired by the homeowner, and (4) that Servpro lost $3,421.08 on the project.

{¶ 11} The standard for reviewing criminal weight-of-the-evidence challenges, established in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), also applies to weight-of-the-evidence challenges in civil cases. *Crawford v. Hawes*, 2013-Ohio-3173, 995 N.E.2d 966, ¶ 33 (2d Dist.), citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. "In applying this standard, the appellate court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.*

*Servpro was not obligated to purchase the baseboard.*

{¶ 12} Tackle argues that the evidence shows that Servpro was obligated to

purchase the baseboard for Tackle. The evidence supporting Tackle's argument primarily comes from the testimony of Peter Elizondo, Tackle's owner, in which he insists that Servpro was obligated to purchase the baseboard. Tackle also points to text messages that Elizondo exchanged with Angela Bowling, Servpro's office manager, and emails exchanged with Brian Pedtke, Servpro's owner. In one text-message exchange, Elizondo asks Bowling, "Are you guys cutting a check for peeks and I need need a draw for Kimball for fridge and trim work." (Plaintiff's Exhibit A-4b). Bowling responds, "Yes but I need to wait until Brian gets back from his appointments he had two first thing." (*Id.*). In an email sent to Pedtke the same day, Elizondo tells him that "* * * Kimball wants a fridge and I have to order all the trim its going to be quite expensive definitely need the funds to order it." (Plaintiff's Exhibit A-4d). Pedtke replies, "Let me look at the estimate for the numbers on the fridge. Once I give you the amount he can pick it out and sign off." (*Id.*). Later in the day, Pedtke replies again, saying, "* * * Also, When will Kimball be done? * * *" (Plaintiff's Exhibit A-4c).

{¶ 13} But Elizondo's testimony and the text messages and emails show at most only that Tackle might have thought that Servpro was obliged to purchase the baseboard. There is no evidence that Servpro agreed to do so. Pedtke testified that Servpro does sometimes "front" money to subcontractors as a courtesy, not because it is obligated to do so. Whether, when, and how much to give a subcontractor before the work is done are decisions entirely within Servpro's discretion. Indeed, this is illustrated here by the fact that Servpro gave Tackle $2,000 on the Kimball project even though Tackle had not yet done $2,000 worth of work and that this amount does not appear to have a calculable basis. With respect to the Kimball project, Pedtke did testify that he did not expect Tackle

to pay for the baseboard and that Servpro would have paid for it—if Tackle had found baseboard that was acceptable. But finding acceptable baseboard proved to be difficult, and Tackle did not find any: "The big problem with the job," Pedtke testified, "was obtaining the exact same like, kind and quality of baseboards. They [Tackle] were unable to find them." (Tr. 61). Elizondo admitted as much in a text message, saying that he "can[']t find the original base[board]," though he said that he did find other baseboard, which he believed could substitute. (Plaintiff's Exhibit A-4e).

{¶ 14} In sum, the evidence does not show that Servpro was obligated to front Tackle money to purchase baseboard for the Kimball project. And even if there were such an obligation, the evidence suggests that Tackle never found baseboard that was acceptable. The trial court did not clearly lose its way by finding that Servpro was not obligated to purchase the baseboard for Tackle.

*Tackle's failure to finish work on the Kimball project was wrongful.*

{¶ 15} Tackle next argues that the evidence shows that its failure to finish work on the Kimball project was not wrongful. Elizondo testified that he told Servpro that he had found the baseboard and needed money to buy it because it was quite expensive. After a month of waiting for money, said Elizondo, Tackle left the Kimball project because it did not have the funds to pay for the baseboard. So it was Servpro's refusal to pay for the baseboard, Elizondo says, that prevented Tackle from finishing its work.

{¶ 16} We have upheld the finding that Servpro was not obligated to pay in advance for the baseboard. Which can mean only that it was Tackle's obligation. We note too that Elizondo testified that "everything on this invoice right here [Tackle's invoice for the Kimball project] is the work I was supposed to do." (Tr. 13). The installation of

baseboard is listed on the invoice, and Elizondo testified that the total cost for that work includes not only installation but also the baseboard itself. This too suggests that Tackle was obligated to purchase the baseboard for the project. The trial court did not clearly lose its way by finding that Tackle's failure to complete its work on the Kimball project was wrongful.

*Tackle's failure to finish caused Servpro to lose the Kimball project.*

{¶ 17} Tackle argues that the evidence shows that Servpro's refusal to pay for the baseboard caused it to lose the Kimball project.

{¶ 18} Pedtke testified that as a result of Tackle's failure to install the baseboard, Servpro was fired by the homeowner. Pedtke explained that "[t]he big problem with the job was obtaining the exact same like, kind and quality of baseboards. They [Tackle] were unable to find them." (Tr. 61). After Tackle left the project, said Pedtke, Servpro tried to find acceptable baseboard but failed. At that point, said Pedtke, the homeowner "was not happy with the fact that we could not find the baseboards * * * and she ended up firing us." (*Id.*). We said earlier that the evidence suggests that Tackle was required to supply and install the baseboard for the project. The just-quoted testimony from Pedtke suggests that by failing to install the baseboard Tackle proximately caused Servpro to lose the entire project. On this record we cannot say the trial court clearly lost its way by finding that Tackle's failure to finish work on the Kimball project resulted in Servpro losing the project.

*Servpro lost money on the Kimball project.*

{¶ 19} Lastly, Tackle argues that the evidence does not support the finding that Servpro lost $3,421.08 on the Kimball project.

{¶ 20} The Kimball project was an insurance claim under the homeowner's policy,

so the insurance company was paying Servpro for the project. The insurance company estimated that the total cost of the work that needed to be done on the project would be $25,242.56. The total cost estimate includes not only amounts for labor and materials but also amounts for profit and overhead. The total amount allocated for profit and overhead is $3,421.08, an equal amount being allocated to each. It was Pedtke's testimony that Servpro lost this entire amount as a result of losing the Kimball project.

{¶ 21} Tackle argues that Servpro could not have lost the entire amount. Tackle points out that the insurance company's cost estimate separately lists each item of work that needs to be done and, in addition to the item's estimated material or labor cost, an amount of profit and overhead for the item. So, for example, item number 18 on the estimate is "Baseboard - 10" hardwood - 2 piece." (Defendant's Exhibit C1). The estimated quantity of baseboard needed is 55.84 linear feet, the estimated price is $11.15 per foot, and the amount of overhead and profit is $130.74. The sum of the overhead-and-profit amount for each item is $3,421.08. Servpro received a total of $24,242.56 from the insurance company and returned $10,287.14 to the homeowner for the work that Servpro did not complete. Using a series of calculations based on the amount that Servpro returned to the homeowner, Tackle concludes that Servpro's lost profit and overhead was only $1,714.52.

{¶ 22} Here, as an initial matter, we do not quite follow the series of calculations that Tackle uses to determine Servpro's lost profit and overhead. But more importantly, as Servpro points out, these calculations were not presented at the hearing. Indeed, no alternative calculation for Servpro's loss on the Kimball project was presented. "The determination of the existence and amount of the lost profits is a question of fact." (Citation

omitted.) *Kosier v. DeRosa*, 169 Ohio App.3d 150, 2006-Ohio-5114, 862 N.E.2d 159, ¶ 33 (6th Dist.). "The general rule regarding damages in civil cases is that they must be proven with certainty, but the amount may be reasonably estimated. 'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.' " (Citation omitted.) *TJX Cos., Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, 916 N.E.2d 862, ¶ 32 (8th Dist.), quoting *Palmer v. Connecticut Ry. & Lighting Co.*, 311 U.S. 544, 559-560, 61 S.Ct. 379, 85 L.Ed. 336 (1941). Here, the evidence supports the finding that Servpro lost $3,421.08 on the Kimball project. This is the amount of overhead and profit on the project calculated by the insurer in its cost estimate. And it is the amount that Pedtke testified Servpro lost. How much of $10,287.14 that Pedtke returned to the home owner was profit rests largely on the credibility of Pedtke's testimony. "The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of facts to resolve." *Crawford*, 2013-Ohio-3173, 995 N.E.2d 966, at ¶ 38, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). We defer to the trial court's credibility determinations in calculating Servpro's loss on the Kimball project. The trial court's calculation of Servpro's loss on the Kimball project is not against the manifest weight of the evidence.

{¶ 23} When applying the manifest-weight-of-the-evidence standard in a civil case we have said "[t]he discretionary power to grant a new trial should be exercised only in

the exceptional case in which the evidence weighs heavily against the judgment." (Citation omitted.) *Crawford* at ¶ 33. This is not the exceptional case in which the evidence weighs heavily against the judgment of the trial court, creating a manifest injustice.

**{¶ 24}** The first assignment of error is overruled.

### B. Prejudgment interest

**{¶ 25}** The second assignment of error states:

PLAINTIFF-APPELLANT IS ENTITLED TO PRE-JUDGMENT INTEREST

ON ITS AWARD.

Tackle argues that it is entitled to prejudgment interest under R.C. 1343.03(A) from September 1, 2016, which it claims is the date that its claim against Servpro accrued.

**{¶ 26}** Neither the magistrate nor the trial court made any finding with respect to prejudgment interest. Perhaps this is because the first time that Tackle mentioned it was in its objections. The request for relief in the complaint asks only for "statutory interest from and after judgment." And Tackle never filed a motion asking for prejudgment interest. While it may be that, as Tackle argues, R.C. 1343.03(A) gives Tackle a right to prejudgment interest, it does not appear that Tackle availed itself of this right. We do not see how we can say that the trial court erred by not awarding something that was never requested. Moreover interest under R.C. 1343.03(A) relates to the date that "money becomes due and payable." In this disputed matter, where the court applied an offset, the appellant failed to demonstrate whether or what money was due and payable until the judgment of the trial court.

**{¶ 27}** The second assignment of error is overruled.

### III. Conclusion

**{¶ 28}** We have overruled both of the assignments of error presented. The trial court's judgment is therefore affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J. and FROELICH, J., concur.

Copies mailed to:

Stephen E. Klein
Jonathon L. Beck
Christine N. Farmer
Hon. Cynthia M. Heck