[Cite as *Deutsche Bank Natl. Trust Co. v. Thomas*, 2025-Ohio-4856.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Deutsche Bank National Trust Company, | : | |
| | : | |
| Plaintiff-Appellant, | | No. 24AP-350 |
| v. | : | (C.P.C. No. 17CV-011198) |
| Susan Thomas et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on October 23, 2025

**On brief:** *Capenter Lipps LLP*, *David A. Wallace*, and *Karen M. Cadieux*, for appellant. **Argued:** *David A. Wallace*.

**On brief:** *DANNLAW*, *Andrew M. Engel*, and *Marc E. Dann*, for appellees. **Argued:** *Andrew M. Engel*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Plaintiff-appellant, Deutsche Bank National Trust Company, as Trustee, in trust for the registered holders of Long Beach Mortgage Loan Trust 2005-WL1, Asset-Backed Certificates, Series 2005-WL1 ("Deutsche Bank"), appeals a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Susan and John Thomas, and a judgment denying Deutsche Bank's motion for a new trial. For the following reasons, we affirm those judgments.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 10, 2005, Susan Thomas executed a note in which she promised to pay $451,250 to her lender, Long Beach Mortgage Company. Susan Thomas and her

husband, John Thomas, also executed a mortgage on their residence, located at 4359 Hanna Hill Drive in Dublin, Ohio, to secure the note.

{¶ 3} On December 19, 2017, Deutsche Bank filed a foreclosure complaint against the Thomases. In the complaint, Deutsche Bank alleged that it possessed a promissory note, executed by Susan Thomas, that it was entitled to enforce. Deutsche Bank also alleged that it was the holder of a mortgage, executed by the Thomases, that secured the promissory note. According to Deutsche Bank, Susan Thomas had defaulted on the promissory note and owed $435,686.92, plus interest, late charges, and advances for taxes and insurance. Deutsche Bank sought a monetary judgment on the note, foreclosure of the mortgage, sale of the mortgaged property, and payment of the amount due on the note from the sale proceeds.

{¶ 4} The Thomases answered the complaint, denying Deutsche Bank's allegations and raising affirmative defenses. Deutsche Bank moved for summary judgment on its claims. Deutsche Bank contended that its evidence proved all elements necessary for foreclosure, including the amount of principal due on the note. Relying upon the affidavit of an officer for its servicing agent, Deutsche Bank maintained that the unpaid principal balance on the note amounted to $435,686.92.

{¶ 5} The Thomases opposed Deutsche Bank's motion for summary judgment. The Thomases argued, in relevant part, that a genuine issue of material fact existed regarding the amount owed on the mortgage loan. To support this argument, the Thomases relied on the affidavit testimony of John Thomas, who identified in the account records $24,279.65 in loan payments that the mortgage servicer held in suspense and failed to apply to the principal balance.

{¶ 6} In a decision and entry dated May 1, 2019, the trial court denied Deutsche Bank's motion for summary judgment. The trial court found that "a dispute of material fact exists as to the amount due and owing on the loan." (May 1, 2019 Decision & Entry at 5.)

{¶ 7} Two days after the trial court denied Deutsche Bank's motion for summary judgment, Deutsche Bank filed a notice that it was waiving its right to pursue a deficiency judgment against Susan Thomas. In this notice, Deutsche Bank expressly recognized that it was "abandoning [its] personal claim against Defendant Susan Thomas," and no longer seeking a monetary judgment against her. (May 3, 2019 Notice of Filing of Waiver of Right

to Pursue Deficiency Jgmt. at 3.) Additionally, Deutsche Bank explicitly acknowledged that it was limiting its recovery "to a foreclosure of the property, and the amount due unto it is to be established at trial solely for the purpose of deciding the amount and priority of its lien above all others." *Id.*

{¶ 8}   Deutsche Bank then filed a motion in limine, in which it sought to limit the issues to be decided at trial to only one:  the amount due and owing on the mortgage loan. Deutsche Bank argued that this issue was the sole genuine issue of material fact remaining after the summary judgment decision.  In a November 19, 2019 entry, the trial court granted Deutsche Bank's motion in limine.

{¶ 9}   With the parties' agreement, a bench trial occurred on March 15, 2022. Deutsche Bank called the only witness to testify at trial: Patrick Pittman, the litigation director for Select Portfolio Servicing ("SPS"), the mortgage servicer for the Thomases' mortgage loan.  Pittman identified exhibit D, a mortgage loan payoff statement that SPS prepared on March 2, 2022.  Pittman testified that the payoff statement stated that the unpaid principal balance on the Thomases' mortgage loan was $435,686.92 and the interest due on the loan was $408,424.89.

{¶ 10} Pittman also testified about the contents of exhibit E, which detailed the payment history of the Thomases' mortgage loan by cobbling together business records from the three different agents that had serviced the loan, beginning with Washington Mutual Bank, followed by JPMorgan Chase Bank, NA ("Chase"), and ending with SPS. Pittman explained that exhibit E contained four types of records: (1) SPS business records, including a financial breakdown summary, financial breakdown statement, and payment history, which together stated the total debt owed and reflected the payment history of the Thomases' mortgage loan from May 8, 2013 to March 1, 2022; (2) a Chase payment history of the Thomases' mortgage loan for the period of August 16, 2005 to May 10, 2013 (the "detailed transaction history"); (3) a Chase payment history of the Thomases' mortgage loan for the period of March 16, 2007 to December 22, 2012 (the "loan history"); and (4) a Washington Mutual payment history of the Thomases' mortgage loan, apparently for 2005 through 2007.  Of these four types of records, only the loan history included entries showing the payments the Thomases made, the portion of each payment applied to principal and interest, and the principal balance after the application of each payment.

{¶ 11} Pittman testified that SPS received the Chase and Washington Mutual business records contained in exhibit E when Chase transferred the Thomases' mortgage loan to SPS. Pittman explained that SPS vets all data it receives from prior mortgage servicers for discrepancies, and it does not accept mortgage loans for servicing until the prior servicer resolves any data discrepancies SPS discovers in the vetting process. Pittman saw nothing in the records of the Thomases' mortgage loan to indicate that a discrepancy existed in the Chase or Washington Mutual payment histories.

{¶ 12} Pittman acknowledged that exhibit E contained two versions of the Chase payment history. Pittman testified that these two versions showed "the same information but in slightly different ways." (Mar. 15, 2022 Tr. at 34.)

{¶ 13} On cross-examination, Pittman conceded that he based his entire testimony on his review of the business records SPS retained on the Thomases' mortgage loan. Pittman, however, had difficulties answering questions about those records. When asked whether the Thomases made any payments between May 1 and November 1, 2005, Pittman said he could not answer because the Washington Mutual payment history was "not very legible." *Id.* at 68. Pittman also acknowledged that he could not determine if the Washington Mutual payment history listed transactions in chronological or reverse chronological order due to the indecipherable print. Pittman admitted he "would be guessing" at the numbers printed in the Washington Mutual payment history. *Id.* at 69.

{¶ 14} Next, Pittman was asked about the loan history, the Chase business record listing the mortgage loan transactions for the period of March 16, 2007 to December 22, 2012. Defense counsel pointed out that the loan history did not contain any entries for the approximately two-year period between March 6, 2009 and January 3, 2011. The Thomases made mortgage loan payments during 2009 and 2010, as shown in the detailed transaction history, the Chase business record that documented the payment history for the period of August 16, 2005 to May 10, 2013. When asked about the gap in the loan history, Pittman answered that he did not "know if [he was] able to point out any dates outside of what [was] reflected in [exhibit E]." *Id.* at 75.

{¶ 15} In a decision and entry dated July 25, 2023, the trial court entered judgment in favor of the Thomases. The trial court stated:

> The Court takes great issue with the disjointed testimony of Mr.
> Pittman and the lack of a clear timeline presented by Plaintiff

to plainly demonstrate the amount due on the note. . . . Plaintiff's only witness is unable to piece together the exhibits. The Court, on [its] own review, is also unable to piece together an accurate picture of the amount due on the note. After reviewing the record, transcript, exhibits, and arguments of the parties, the Court finds that Plaintiff has not met its burden to prove all the elements necessary to grant it judgment in foreclosure by a preponderance of the evidence.

(July 25, 2023 Decision & Entry at 3-5.)

{¶ 16} Deutsche Bank moved for a new trial. In a decision and entry dated May 20, 2024, the trial court denied the motion for a new trial.

## II. ASSIGNMENTS OF ERROR

{¶ 17} Deutsche Bank now appeals, and it assigns the following errors:

[1.] The trial court erred as a matter of law when it dismissed the Complaint for failure to prove the amount of damages despite undisputed evidence establishing the existence and amount of damages.

[2.] The trial court erred as a matter of law when it dismissed the Complaint for failure to provide a complete legible payment history when a complete payment history is not required to prove damages in a foreclosure action under Ohio law.

[3.] The trial court erred when it dismissed the Complaint for failure to prove damages because a finding of no damages was not supported by competent, credible evidence.

[4.] The trial court erred as a matter of law when it failed to order a new trial despite obvious legal errors in its decision to dismiss the Complaint after trial.

[5.] The trial court abused its discretion when it refused to supplement the trial record with evidence already in the record and explanatory evidence that would allow for the determination of damages.

## III. STANDARD OF REVIEW

{¶ 18} Generally, when reviewing a judgment in a civil case issued after a bench trial, an appellate court applies the manifest-weight-of-the-evidence standard of review. *Elevation Ents. Ltd. v. NMRD Ltd.*, 2023-Ohio-4433, ¶ 18 (10th Dist.); *Jenkins v. Dragoo*

*& Assocs., Inc.*, 2023-Ohio-4103, ¶ 14 (10th Dist.). The phrase "manifest weight of the evidence" "relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It " 'concerns "the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on [the evidence's] effect in inducing belief." ' " (Emphasis deleted.) *Id.* at ¶ 12, quoting *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *Black's Law Dictionary* 1594 (6th Ed. 1990). In reviewing a judgment under the manifest-weight standard, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Id.* at ¶ 20. In weighing the evidence, an appellate court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. This presumption exists because the trier of fact is in the best position to evaluate the evidence by viewing the witnesses and observing their demeanor, voice inflections, and gestures. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 19} Where an appeal of a judgment issued after a bench trial presents a question of law, an appellate court reviews that question de novo. *Taylor Bldg. Corp. v. Benfield*, 2008-Ohio-938, ¶ 35; *Jenkins* at ¶ 14. Accordingly, we will review the trial court's findings of fact under the manifest-weight standard, and the trial court's conclusions of law de novo.

{¶ 20} In this appeal, in addition to reviewing a judgment issued after a bench trial, we also review a denial of a motion for a new trial. Civ.R. 59(A) provides multiple grounds on which a trial court may grant a new trial. Where a trial court decides a motion for new trial on a ground that requires the trial court to exercise its sound discretion, an appellate court reviews the decision on the motion under the abuse-of-discretion standard. *Shaw v. Underwood*, 2017-Ohio-845, ¶ 32 (10th Dist.); *Sully v. Joyce*, 2011-Ohio-3825, ¶ 7 (10th Dist.). Thus, the abuse-of-discretion standard applies to an appeal of a denial of a new trial under the catch-all provision, which permits a new trial "in the sound discretion of the trial court for good cause shown." *Jones v. Cleveland Clinic Found.*, 2020-Ohio-3780, ¶ 33. An abuse of discretion is conduct that is unreasonable, arbitrary, or unconscionable. *State v. Hickman*, 2024-Ohio-5747, ¶ 32.

{¶ 21} However, when the basis for a motion for a new trial involves a question of law, then the de novo standard of review applies. *Shaw* at ¶ 32; *Sully* at ¶ 8. An appellate court thus reviews a ruling on a motion for a new trial based on a judgment that is contrary to law, pursuant to Civ.R. 59(A)(7), under the de novo standard of review. *Fairrow v. OhioHealth Corp.*, 2020-Ohio-5595, ¶ 20 (10th Dist.); *Sully* at ¶ 8. Likewise, an appellate court reviews a ruling on a motion for a new trial based on an error of law, pursuant to Civ.R. 59(A)(9), under the de novo standard of review. *Fairrow* at ¶ 20; *Sully* at ¶ 8.

## IV. ANALYSIS

### A. First Assignment of Error – Error in Granting Judgment for the Thomases When Deutsche Bank Presented Evidence of Damages

{¶ 22} By its first assignment of error, Deutsche Bank argues that the trial court erred, as a matter of law, in granting judgment for the Thomases when undisputed evidence established that Deutsche Bank suffered damages. Deutsche Bank relies on precedent stating that only uncertainty as to the existence of damages, and not uncertainty as to the amount of damages, precludes recovery for breach of contract. Deutsche Bank contends that by establishing that the mortgage loan was in default and not paid in full, it proved that that it incurred damages. Moreover, Deutsche Bank argues that it presented sufficient evidence to prove the amount of its damages with reasonable certainty. Therefore, according to Deutsche Bank, it was entitled to judgment in its favor as a matter of law.

{¶ 23} Initially, we must clarify the cause of action at issue at trial. Upon a mortgagor's default, a mortgagee may elect among separate and independent remedies to collect the debt secured by the mortgage. *Deutsche Bank Natl. Trust Co. v. Holden*, 2016-Ohio-4603, ¶ 21. First, the mortgagee may pursue an action for breach of contract to obtain a personal judgment against the mortgagor to recover the amount due on the promissory note. *Id.* at ¶ 22. Second, the mortgagee may bring a foreclosure action to cut off the mortgagor's right of redemption, determine the existence and extent of the mortgage lien, and have the mortgaged property sold for the satisfaction of the lien. *Id.* at ¶ 24. Typically, a mortgagee combines in one lawsuit a legal action for breach of contract based on default on the note together with an equitable action for foreclosure based on the mortgage. *Id.* at ¶ 5. Although this case began that way, by the time it reached trial, Deutsche Bank had

abandoned its legal action for breach of contract. Thus, only the equitable action for foreclosure remained for the trial court's adjudication.

{¶ 24} The solely equitable nature of this action matters because, on appeal, Deutsche Bank argues that evidence of the existence of damages required the trial court to enter judgment in its favor. Money damages are a classic form of legal—not equitable—relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Generally, actions that seek to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, because they seek compensation for loss resulting from the defendant's breach of a legal duty. *Id.*; *State ex rel. Ohio Bur. of Workers' Comp. v. O'Donnell*, 2023-Ohio-428, ¶ 16. In its complaint, Deutsche Bank sought monetary damages from Susan Thomas for the breach of her contractual obligation to pay the amounts due under the promissory note. But Deutsche Bank abandoned its legal action for money damages and proceeded solely on its equitable action for foreclosure.

{¶ 25} While damages are an essential element of an action for breach of contract, *Wildi v. Hondros College*, 2009-Ohio-5205, ¶ 14 (10th Dist.), damages are not an element a mortgagee must prove to foreclose on a mortgage. To obtain foreclosure, a mortgagee must show (1) it is the holder of the note and mortgage, or a person entitled to enforce the note, (2) if it is not the original mortgagee, the chain of assignments and transfers, (3) the mortgagor is in default, (4) all conditions precedent have been met, and (5) *the amount of principal and interest due. U.S. Bank Trust, N.A. v. Williams*, 2024-Ohio-3377, ¶ 17 (10th Dist.); *Nationstar Mtge. v. Bates-Brown*, 2019-Ohio-1073, ¶ 16 (10th Dist.). Thus, to prevail in a foreclosure action, the mortgagee does not demonstrate damages, but "the extent of the mortgage lien, which is measured by the amount of the outstanding mortgage debt." *Holden* at ¶ 28; *accord Doyle v. West*, 60 Ohio St. 438, 443 (1899) ("The finding of the amount due is a necessary predicate to an order of sale in a foreclosure proceeding.").

{¶ 26} Because only the equitable action for foreclosure remained before the trial court for adjudication, the law Deutsche Bank cites, which applies to the recovery of money damages, is irrelevant. To obtain foreclosure, Deutsche Bank had the burden of proving by a preponderance of the evidence the *amount* of principal and interest due on the note. *See Williams* at ¶ 23 ("It was the [mortgagee's] burden to establish by a preponderance of the evidence all elements of the foreclosure action, including the amount of principal and

interest due on the mortgage note."). Therefore, merely providing evidence that *some* principal and interest was due and owing could not satisfy the final element necessary to obtain foreclosure.

{¶ 27} Moreover, we are not persuaded Deutsche Bank prevails even if we consider the precedent it relies upon. As plaintiff, Deutsche Bank bore the burden of proving the nature and extent of its damages in order to be entitled to compensation. *See Jayashree Restaurants, LLC v. DDR PTC Outparcel LLC*, 2016-Ohio-5498, ¶ 13 (10th Dist.); *Natl. Contracting Group, Ltd. v. P&S Hotel Group, Ltd.*, 2021-Ohio-2940, ¶ 24 (10th Dist.). The amount of damages to be awarded in an action for breach of contract is a factual issue and, thus, it is within the trier of fact's province to determine that amount. *Cirotto v. Am. Self Storage*, 2025-Ohio-1670, ¶ 66 (10th Dist.); *Mid Am. Constr., LLC v. Univ. of Akron*, 2019-Ohio-3863, ¶ 88 (10th Dist.).

{¶ 28} As Deutsche Bank points out, "[w]hile uncertainty as to the fact of damages will prevent a damage award, uncertainty as to the amount of damages does not prevent recovery." *Kennerk v. Haney*, 1997 Ohio App. LEXIS 2349, *12 (10th Dist. May 29, 1997); *accord Ohio Dist. Council, Inc. v. Speelman*, 2018-Ohio-4388, ¶ 36 (12th Dist.) (holding the same); *Collins v. Mullinax E., Inc.*, 2003-Ohio-3497, ¶ 21 (11th Dist.) (holding the same). Uncertainty as to the amount of damages does not bar recovery because a plaintiff need only prove the amount of damages with reasonable certainty. *Cirotto* at ¶ 65; *Natl. Contracting Group, Ltd.* at ¶ 24. Importantly, allowing the recovery of an amount of damages proven with reasonable certainty "does not mean . . . that, in a case in which damages are capable of being quantified, a plaintiff may neglect doing so and still be entitled to a recovery. While the law does not require impossibilities, it does require a person seeking damages to not only prove that he has been damaged, but to also prove the amount of his damages to 'that degree of certainty of which the nature of the case admits.' " *Urbank v. Urbank*, 1996 Ohio App. LEXIS 1145, *14 (9th Dist. Mar. 27, 1996), quoting *Burckhardt v. Burckhardt*, 42 Ohio St. 474, 499 (1885); *accord Speelman* at ¶ 36 ("As to the amount of damages, only a reasonable certainty is required, which has been defined as 'that degree of certainty of which the nature of the case admits.' ") (further citation omitted); *Fouty v. Ohio Dept. of Youth Servs.*, 2006-Ohio-2957, ¶ 34 (10th Dist.) (" 'Reasonable certainty' has been defined as ' "that degree of certainty of which the nature of the case

admits." ' ") (further citation omitted); *Collins* at ¶ 21 ("Only reasonable certainty as to the amount of damages is required[,] which is that degree of certainty of which the nature of the case admits.").

{¶ 29} The nature of this case enabled Deutsche Bank to compute the amount owed on the mortgage loan down to the penny. Relying on the business records Deutsche Bank introduced into evidence, Pittman testified that the unpaid principal balance on the loan was $435,686.92 and the interest due on the loan was $408,424.89. If believed by the trier of fact, this evidence would establish the amount of principal and interest due on the loan. The trial court, however, did not find Pittman's testimony credible and persuasive. The trial court disregarded Pittman's testimony because after reviewing the business records Pittman relied upon, the court was "unable to piece together an accurate picture of the amount due on the note." (July 25, 2023 Decision & Entry at 5.)

{¶ 30} Deutsche Bank argues that the trial court erred in rejecting Pittman's testimony because the court applied an incorrect legal standard that required complete accuracy as to the amount of damages. According to Deutsche Bank, "Ohio law does not require complete accuracy; all Ohio law requires is evidence sufficient to allow an approximation." (Appellant's Brief at 25.) But Deutsche Bank misconstrues the law. We, and other Ohio appellate courts, have held, " 'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.' " *Jayashree Restaurants, LLC* at ¶ 14, quoting *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927); *accord Neyer Holding II, Inc. v. Huang*, 2025-Ohio-1776, ¶ 70 (12th Dist.) (holding the same); *180 Degree Solutions LLC v. Metron Nutraceuticals, LLC*, 2021-Ohio-2769, ¶ 42 (8th Dist.) (holding the same); *Tackle Constr. Group, LLC v. Pedtke Ents., Inc.*, 2018-Ohio-1859, ¶ 22 (2d Dist.) (holding the same). Consequently, Ohio law does not excuse *complete accuracy*; instead, it excuses *absolute exactness* and allows a damages approximation, but only when absolute exactness is not possible. Here, Deutsche Bank presented no evidence suggesting that is unable to calculate the amount due on the loan with absolute exactness. To the contrary, it purported to do so already, and it claims that Susan Thomas owes it $435,686.92 in unpaid principal and $408,424.89 in interest. Thus, the trial court did not err in requiring Deutsche Bank to prove the exact amount owed.

{¶ 31} Next, Deutsche Bank argues that, as a matter of law, the trial court had to accept Pittman's testimony regarding the unpaid principal balance as valid because no evidence indicated it was incorrect. To support this argument, Deutsche Bank relies on *Beacon Funding Corp. v. CV Transp. & Towing, Inc.*, 2024-Ohio-1993 (4th Dist.). In that case, the plaintiff filed a complaint alleging that the defendants defaulted under the terms of a commercial equipment lease. The plaintiff moved for summary judgment and attached an affidavit attesting to the amount the defendants owed, along with an account deficiency statement itemizing that amount. The trial court granted the plaintiff summary judgment and awarded it damages.

{¶ 32} The defendants appealed the grant of summary judgment, arguing genuine issues of material fact remained regarding the amount of damages. However, the defendants did not point to any evidence suggesting the damage amount was incorrect, other than a conclusory allegation in an affidavit. *Id.* at ¶ 20. The defendants instead argued that the plaintiff was required to explain the calculations listed on the account deficiency statement. *Id.* The appellate court concluded that the defendants' conclusory allegation challenging the amount owed was insufficient to overcome the plaintiff's properly supported motion for summary judgment. *Id.* at ¶ 21. In light of the defendants' failure to point to any specific evidence that the plaintiff's damage calculations were incorrect, the appellate court accepted the calculations as accurate. *Id.* Consequently, the appellate court affirmed the grant of summary judgment in the plaintiff's favor. *Id.* at ¶ 22.

{¶ 33} Significantly, in *Beacon Funding Corp.*, the case was resolved on summary judgment. In such cases, a court does not *weigh* evidence or consider the credibility of the witnesses, but only reviews and considers the *sufficiency* of the evidence as a matter of law. *Eysoldt v. Proscan Imaging*, 2011-Ohio-2359, ¶ 18 (1st Dist.); *Miller v. Coldwell Banker Hunter Realty*, 2010-Ohio-5840, ¶ 18 (8th Dist.). Consequently, in *Beacon Funding Corp.*, an affidavit and account deficiency statement setting forth the amount owed constituted *sufficient* evidence to prove the plaintiff's claim for breach of contract and entitle the plaintiff to summary judgment.

{¶ 34} Here, unlike in *Beacon Funding Corp.*, the case was resolved by a trier of fact after a trial. In a civil trial, the plaintiff bears the burden of producing sufficient evidence to support its case (the "burden of production") *and* the burden of persuading the trier of

fact that the alleged facts are true by the quantum of evidence the law demands (the "burden of persuasion"). *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 21-22. Evidence that may have been sufficient to establish an element of the plaintiff's case if presented on summary judgment must also persuade the trier of fact at trial.

{¶ 35} The outcome of this case hinged not on the sufficiency of Deutsche Bank's evidence, but whether Deutsche Bank persuaded the trier of fact that the amount it stated Susan Thomas owed was true by a preponderance of the evidence. *Beacon Funding Corp.*, a decision arising from summary judgment, did not—and could not—address whether a statement regarding an amount owed constituted evidence persuasive and credible enough to satisfy Deutsche Bank's burden of persuasion. Consequently, *Beacon Funding Corp.* did not impose an obligation on the trial court, as the trier of fact, to weigh Deutsche Bank's evidence in its favor.

{¶ 36} While Deutsche Bank advances further arguments in support of its first assignment of error, these remaining arguments all challenge the trial court's weighing of the evidence. We, therefore, will address these arguments in conjunction with the third assignment of error.

{¶ 37} In sum, we conclude that the trial court did not err, as a matter of law, in granting judgment for the Thomases despite the evidence in the record regarding the existence and amount of damages. Accordingly, we overrule Deutsche Bank's first assignment of error.

### B. Second Assignment of Error – Error in Considering Exhibit E When Entering Judgment for the Thomases

{¶ 38} By its second assignment of error, Deutsche Bank argues that the trial court erred, as a matter of law, in requiring it to provide a complete payment history of the mortgage loan. According to Deutsche Bank, Ohio law does not require a mortgagee to produce a payment history to prevail on a foreclosure action. Therefore, Deutsche Bank reasons, the trial court erred by finding that the lack of a complete payment history caused it to not meet its burden of proof.

{¶ 39} Initially, Deutsche Bank asserts that "[i]t is well established in Ohio that a complete payment history is *not* required to establish the amount owed on a mortgage loan." (Emphasis in original.) (Appellant's Brief at 31.) This assertion, however, fails to

fully articulate the law. Some Ohio courts of appeal have held that, *when moving for summary judgment*, a mortgagee need not submit a payment history where the mortgagor does not contest the amount of principal and interest due. *See, e.g.*, *JPMorgan Chase Bank, NA v. Carpenter*, 2025-Ohio-295, ¶ 24-25 (2d Dist.); *MTGLQ Investors, LP v. Stilwell*, 2021-Ohio-499, ¶ 53-55 (5th Dist.); *First Fin. Bank, N.A. v. Mendenhall*, 2017-Ohio-7628, ¶ 11-13 (1st Dist.). In these cases, courts find an affidavit stating the amount due on the mortgage loan is sufficient to allow a trial court to enter summary judgment and order foreclosure, unless the mortgagor refutes the amount due with evidence that a different amount is owed. *Carpenter* at ¶ 24-25; *Stilwell* at ¶ 53; *Mendenhall* at ¶ 11.

{¶ 40} This case was not decided on summary judgment, so the evidentiary standards applicable to motions for summary judgment do not apply. Consequently, even if this court adopted the precedent set forth above, it would not directly pertain to this case. At most, the foregoing precedent leads to the conclusion that, in a trial, a summary statement of the amount due on a mortgage loan can constitute *sufficient* evidence of the principal balance and interest due on the loan. Of course, a mortgagee may choose to present additional evidence at trial, such as a payment history, to persuade the trier of fact that the amount stated is accurate, thus satisfying its burden of persuasion on the final element of a foreclosure action.

{¶ 41} In this case, Deutsche Bank chose to introduce into evidence exhibit E, the payment history assembled from multiple business records. Deutsche Bank then relied on exhibit E, along with Pittman's testimony and exhibit D, to prove the amount due on the mortgage loan. The trial court, as trier of fact, acted properly in weighing all Deutsche Bank's evidence to arrive at its judgment.

{¶ 42} In addition to the precedent discussed above, Deutsche Bank relies upon *WUPW TV-36 v. Direct Results Marketing, Inc.*, 70 Ohio App.3d 710 (10th Dist. 1990), to argue that it did not need a complete payment history to prove the amount due on the loan. In that case, the trial court entered judgment for the plaintiff on an action on an account after a trial. On appeal, the defendant argued that the trial court erred in admitting into evidence the statement of account, in part, because it was an incomplete record that did not contain a running balance since the inception of the account. *Id.* at 715. We concluded that the trial court did not err in admitting into evidence a partial statement of account. *Id.* at

716. The partial statement of account was admissible because it commenced with a date on which the account was current (i.e., the balance was zero) and showed a running or developing balance over the period during which the account remained unpaid. *Id.* at 715-716.

{¶ 43} Deutsche Bank relies on *WUPW TV-36* to argue that a partial payment history is sufficient to establish an amount due. However, in *WUPW TV-36*, we merely determined that the partial statement of account constituted *admissible* evidence; we did not analyze the sufficiency of that evidence. More significantly, *WUPW TV-36* cuts against Deutsche Bank. In that case, we stated that an account must " 'begin[] with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum.' " *Id.* at 715, quoting *Brown v. Columbus Stamping & Mfg. Co.*, 9 Ohio App.2d 123, 126 (10th Dist. 1967). An account must also show itemized debits and credits, as well as " 'a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due.' " *Id.*, quoting *Brown* at 126.

{¶ 44} Usually, when dealing with a mortgage loan, the beginning provable sum uncontested by the parties is the amount borrowed as stated in the note. A payment history that includes payments and a corresponding decreasing principal balance would show both credits to the loan account and a running balance of the debt owed on the loan. As the Supreme Court of Ohio has stated, when a mortgagee seeks to prove the amount of the outstanding mortgage debt, "[g]enerally, 'the promissory note is the primary evidence of the debt.' " *Holden*, 2016-Ohio-4603, at ¶ 28, quoting *Washer v. Tontar*, 128 Ohio St. 111, 113 (1934). "[T]he borrower's history of payments is evidence of amounts credited to reduction of the principal, which proportionately reduce the mortgage lien." *Id.* Therefore, to determine the outstanding mortgage debt from a payment history, the payment history would have to begin with the amount borrowed, list all payments, and show the proportional reduction of the principal. Typically, a partial payment history—like exhibit E—would not suffice to prove the outstanding mortgage debt.

{¶ 45} In sum, we agree that Ohio law did not require Deutsche Bank to introduce exhibit E at trial. Having done so, however, Deutsche Bank cannot complain that the trial court erred in considering that evidence in determining whether it met its burden of proof. Accordingly, we overrule Deutsche Bank's second assignment of error.

## C. Third Assignment of Error – Manifest Weight

{¶ 46} By its third assignment of error, Deutsche Bank argues that the judgment in the Thomases' favor is against the manifest weight of the evidence. We disagree.

{¶ 47} In support of this assignment of error, Deutsche Bank points to the evidence that supports its contention that it proved the amount owed on the mortgage loan: Pittman's testimony and exhibit D (the payoff statement). Deutsche Bank also recalls Pittman's testimony that SPS verified the information it received regarding the Thomases' mortgage loan through a data vetting process. Additionally, Deutsche Bank asserts that the legible portions of exhibit E show unpaid principal balances at various times during the lifetime of the mortgage loan.

{¶ 48} However, Deutsche Bank does not contest that the Washington Mutual portion of exhibit E is completely illegible. Pittman testified that the Thomases' first payment on the $451,250 mortgage loan was due on May 1, 2005, while Washington Mutual was servicing the mortgage loan. According to the Chase loan history, the first loan payment to Chase, made on March 16, 2007, reduced the principal amount to $443,072.46. Thus, payments the Thomases made to Washington Mutual reduced the principal owed. But, because the trial record contains no legible payment documentation for the approximately two-year period between May 1, 2005 and March 16, 2007, we cannot ascertain the amount of the Thomases' payments or whether Washington Mutual properly applied those payments to the principal balance.

{¶ 49} Next, Deutsche Bank does not dispute that the Chase loan history contains no entries between the period of March 6, 2009 and January 3, 2011. The loan history is the only business record in exhibit E that has entries for payments that include the total amount of each payment, the specific amount of the payment allocated to principal and interest, and the principal balance after the application of the payment. While the Chase detailed transaction history has entries for payments, it has no information about the allocation of those payments or the principal balance. The detailed transaction history shows that the Thomases made payments during the period missing from the loan history. Pittman testified that Chase applied the Thomases' 2009 and 2010 payments to the mortgage loan. However, there is no documentation establishing that Chase properly applied the payments or proportionally reduced the principal balance.

{¶ 50} While Pittman unequivocally testified that the principal balance on the mortgage loan amounted to $435,686.92 and interest to $408,424.89, he also admitted that he based his testimony solely on the business records. Pittman's testimony, therefore, can only be as trustworthy as the business records he relied upon. The trial court, as trier of fact, was primarily tasked with weighing Pittman's testimony and judging whether it was worthy of belief. *See State v. Frazier*, 2007-Ohio-5048, ¶ 106 ("[I]ssues concerning the weight given to the evidence and the credibility of the witnesses are primarily for the trier of fact."). Because the trial court could not ascertain from Deutsche Bank's evidence that SPS properly calculated the amount due on the mortgage loan, the trial court had cause to doubt the credibility of both Pittman and the records he relied upon. Quite simply, the trial court was unpersuaded by Deutsche Bank's evidence and, thus, found that Deutsche Bank had not met its burden of proof as to the amount of principal and interest owed. In light of the presumption in favor the trier of fact, we cannot conclude that the trial court clearly lost its way and created such a manifest miscarriage of justice that we must reverse the judgment.

{¶ 51} We thus determine that the judgment is not against the manifest weight of the evidence. Accordingly, we overrule the third assignment of error.

### D. Fourth Assignment of Error – New Trial Based on Alleged Errors of Law

{¶ 52} By its fourth assignment of error, Deutsche Bank argues that the trial court erred in denying its motion for a new trial despite errors of law. We disagree.

{¶ 53} A trial court may grant a new trial if, pursuant to Civ.R. 59(A)(7), "[t]he judgment is contrary to law," or, pursuant to Civ.R. 59(A)(9), there is an "[e]rror of law occurring at the trial and brought to the attention of the trial court by the party making the application." In this case, Deutsche Bank contends that it established both of these grounds for a new trial. Deutsche Bank maintains that the trial court misapplied Ohio law by granting judgment for the Thomases based on uncertainty as to the amount of damages, when there was no uncertainty as to the existence of damages. Deutsche Bank also claims that the trial court misapplied Ohio law by requiring it to provide a complete payment history to prevail at trial. For the reasons set forth above, we have rejected both of Deutsche Bank's legal arguments.

{¶ 54} We thus conclude that the trial court did not err in denying Deutsche Bank's motion for a new trial under Civ.R. 59(A)(7) and (9). Accordingly, we overrule Deutsche Bank's fourth assignment of error.

### E. Fifth Assignment of Error – Alleged Abuse of Discretion in Refusing to Open the Judgment and Allow Additional Evidence

{¶ 55} By its fifth assignment of error, Deutsche Bank argues that the trial court abused its discretion in refusing to open the judgment and take additional evidence. We disagree.

{¶ 56} Civ.R. 59(A) lists nine enumerated grounds and one catch-all ground on which a trial court may grant a new trial. In addition to listing the grounds for a new trial, Civ.R. 59(A) also provides that, when granting a new trial, a trial court "shall specify in writing the grounds upon which the new trial is granted." Finally, the last paragraph of Civ.R. 59(A) states that, "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend the findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment."

{¶ 57} The last paragraph of Civ.R. 59(A) does not serve as a separate ground on which to grant a new trial. *Shaw Steel, Inc. v. Ronfeldt Mfg., L.L.C.*, 2016-Ohio-1117, ¶ 38 (8th Dist.); *Marysville Newspapers, Inc. v. Delaware Gazette Co.*, 2007-Ohio-4365, ¶ 59 (3d Dist.). Rather, it merely permits "a partial new trial in a non-jury action so that the complete retaking of testimony may be avoided." 2013 Staff Note to Civ.R. 59; *accord Marysville Newspapers, Inc.* at ¶ 59 ("The clear language of the rule shows that the [last] paragraph was merely intended to provide the court with remedial options upon granting a new trial if the original trial was to the court."). Consequently, to obtain the remedy set forth in the last paragraph of Civ.R. 59(A), the movant must demonstrate one of the Civ.R. 59(A) grounds for a new trial.

{¶ 58} Although Deutsche Bank argues on appeal that the trial court erred in denying its request to reopen the trial record, it does not explicitly state the Civ.R. 59(A) ground that justified the remedy it sought. Instead, it cites to two cases that it claims support its argument that it deserved a new trial because the trial court awarded it no

damages, even though it established that it suffered damages as a result of Susan Thomas' default on the note.

{¶ 59} In the first case, *Acton v. Ventling*, 1994 Ohio App. LEXIS 2740 (9th Dist. June 27, 1994), the jury returned a verdict finding the defendant liable for negligence, but awarded the plaintiff zero dollars in damages. The plaintiff filed a motion for a new trial, which the trial court denied. The plaintiff appealed. The appellate court found the award of no damages against the manifest weight of the evidence, apparently because the plaintiff provided both sufficient and credible evidence proving the amount of her damages. *Id.* at *3. Thus, the appellate court concluded the trial court abused its discretion in denying the plaintiff's motion for a new trial. *Id.*

{¶ 60} In deciding *Acton*, the appellate court did not identify the Civ.R. 59(A) ground that applied to its decision. However, the reasoning underlying the appellate court's decision correlates with Civ.R. 59(A)(6), which allows a new trial when "[t]he judgment is not sustained by the manifest weight of the evidence." Deutsche Bank, however, did not raise Civ.R. 59(A)(6) as a basis for a new trial in the trial court. A party who fails to raise an argument in the trial court waives or forfeits the right to raise it in the appellate court. *West v. Bode*, 2020-Ohio-5473, ¶ 43; *accord Fiorilli Constr., Inc. v. A. Bonamase Contracting, Inc.*, 2011-Ohio-107, ¶ 52 (8th Dist.) (by failing to argue a new trial was warranted on a particular ground in the trial court, the party waived that ground on appeal). Therefore, Deutsche Bank cannot rely on Civ.R. 59(A)(6) to argue that the trial court erred in not opening the judgment and taking additional evidence.

{¶ 61} Moreover, even on the merits, an argument for a new trial premised on Civ.R. 59(A)(6) must fail. For the reasons we discussed forth above, the trial court's judgment in the Thomases' favor is not against manifest weight of the evidence. In short, the trial court did not err in deciding, based on the evidence adduced, that Deutsche Bank failed to prove the amount of principal and interest owed. Therefore, the trial court did not abuse its discretion in denying Deutsche Bank relief based on Civ.R. 59(A)(6).

{¶ 62} Second, Deutsche Bank cites *Zerbe v. Zerbe*, 2005-Ohio-1180 (1st Dist.), where the appellate court affirmed the granting of a motion for a new trial based on the catch-all ground. In addition to the enumerated reasons, a trial court may grant a new trial "in the sound discretion of the court for good cause shown." Civ.R. 59(A). This catch-all

provision "finds its source in the 'inherent power' of a court to grant a new trial in its 'sound discretion.' " 2013 Staff Note to Civ.R. 59, citing *Wagner v. Long*, 133 Ohio St. 41, 48 (1937). A trial court may exercise this power "in the interest of justice" when the facts and circumstances in the case make the granting of a new trial "imperative." *Wagner* at 48; *accord Zerbe* at ¶ 18 ("[T]he 'good cause' provision is an independent ground for granting a new trial 'available for use in the interest of justice.' ") (further citation omitted).

{¶ 63} Deutsche Bank's argument that opening the judgment is in the interest of justice begins with its repeated contention that a trial court is obligated under Ohio law to determine damages when they exist. As we explained above, this is an oversimplification of the law and fails to persuade us that the trial court abused its discretion in denying Deutsche Bank's motion for a new trial.

{¶ 64} Deutsche Bank next characterizes the judgment against it as an unfair elevation of form over substance. According to Deutsche Bank, the trial court exaggerated the importance of a couple of illegible pages in the Washington Mutual payment history, which the Thomases never showed affected the principal or interest due, when a legible Washington Mutual payment history was attached to Deutsche Bank's motion for summary judgment. Thus, Deutsche Bank contends, the interest of justice requires the reopening of the record to allow it to submit additional evidence.

{¶ 65} Deutsche Bank's argument ignores that its evidentiary issues surpass the illegible Washington Mutual payment history. As we explained above, only the Chase loan history showed payment amounts credited to reduction of the principal, and that record lacked almost two years of transactions. Deutsche Bank wants nothing less than a "do over"—another chance to convince the trial court of the veracity of the principal and interest totals by providing more detailed supporting documentation. However, " '[t]he purpose of Civ.R. 59 is not to simply allow a party a second opportunity to present evidence that should have been presented at the first trial.' " *Shaw Steel, Inc.*, 2016-Ohio-1117, at ¶ 39 (8th Dist.), quoting *Riesbeck v. Indus. Paint & Strip*, 2009-Ohio-6250, ¶ 16 (7th Dist.). We, therefore, determine that the trial court did not abuse its discretion in finding no good cause to reopen the trial record.

{¶ 66} In sum, we conclude that the trial court did not abuse its discretion in refusing to open the judgment and take additional evidence. Accordingly, we overrule the fifth assignment of error.

## V. CONCLUSION

{¶ 67} For the foregoing reasons, we overrule the first, second, third, fourth, and fifth assignments of error. We affirm the judgments of the Franklin County Court of Common Pleas that granted judgment in favor of the Thomases and denied Deutsche Bank's motion for a new trial.

*Judgments affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

———————————